## JOSEPH B. HERBERT vs. THE COUNTY COMMISSIONERS OF BALTIMORE COUNTY.

*Validity of Statute Regulating Fees of Justices of the Peace in Criminal Cases in a Particular County—Special Law—Title of Act.*

The Act of 1900, ch. 147, a local law relating to Baltimore County, provides that no Justice of the Peace (except station-house Justices) shall receive from the county more than $10 for his services in any one month in criminal cases. Prior to the passage of that Act Justices of the Peace had been paid according to a fee table established by law. Art. 4, sec. 42 of the Constitution declares that Justices of the Peace shall receive such compensation as hath been heretofore or may hereafter be prescribed by law. *Held*, that this statute is not in violation of the Fourteenth Amendment of the Constitution of the United States, since all the Justices of that county are equally subject to the classification thus made and they accepted their offices subject to the right of the State to fix their compensation.

Such statute, regulating the compensation of Justices of the Peace in a particular county, is not a special law within the meaning of Constitution, Art. 3, sec. 33, which provides that no special law shall be passed

for any case in which provision has been made by an existing general law, because the special laws contemplated by this section are those that provide for individual cases and not general local laws, applicable to áll persons within defined territorial limits.

The title of the Act of 1900, ch. 147, is an Act to repeal certain sections of the Local Law of Baltimore County, sub-title Justices of the Peace and Constables, and to re-enact the same with amendments and additions. The body of the Act changed the compensation allowed to Justices of the Peace of that county in criminal cases. *Held*, that the title of this Act complies with Constitution, Art. 3, sec. 29, which provides that every law shall embrace but one subject and that shall be described in the title; the subject of the legislation being one, viz.: the regulation of the number, duties and compensation of Justices of the Peace and Constables in Baltimore County.

Appeal from the Circuit Court for Baltimore County (BURKE, J.)      .

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD and SCHMUCKER, JJ.

*Z. Howard Isaac*, for the appellant.

*Osborne I. Yellott*, for the appellee.

FOWLER, J., delivered the opinion of the Court.

This is a novel suit, but the questions presented are, we think, free from difficulty, for they may be briefly disposed of by appealing to principles which have been frequently announced by decisions of this and other Courts.

The facts out of which this controversy arises are as follows: The plaintiff is a Justice of the Peace for Baltimore County, duly commissioned and qualified. Shortly before the institution of this suit, the plaintiff presented his account against the County Commissioners for his services in criminal cases; the commissioners refused to pay him the amount he claimed, but tendered him the sum of $91.25. He refused to accept this sum in payment and claimed that he was entitled to $291.70, and has brought this suit against the commissioners of Baltimore County to recover that amount.

The sole question is whether the Act of 1900, chap. 147,

and especially the sections thereof numbered 142C and 142D are valid and constitutional. If they are, it is conceded, the plaintiff is entitled to recover only the sum the defendants offered to pay; but if they are not valid, the plaintiff is entitled to $291.70, the amount he claims.

The case was tried before the Court without a jury on an agreed statement of facts. The facts, however, which we have stated are sufficient to present the one question here involved.

During the trial below the plaintiff reserved one exception and that was to the ruling of the Court upon the prayers. The effect of this ruling as we have said was that the validity of the Act in question was maintained, and it will be unnecessary, therefore, to refer with greater particularity to the action of the Court in this respect. There was a verdict and judgment for the defendants and the plaintiff has appealed.

The counsel for the defendants has given in his brief a synopsis of the various local laws regulating the charges and fees of magistrates in Baltimore County from which it appears that prior to 1890 this subject was governed by the provisions of the general Code. In the year 1900 the Act in question was passed repealing all existing laws and re-enacting the entire local law of Baltimore County on the subject of " Justices of the Peace and Constables " as it now exists. By section 142C of this Act it is provided that no Justice of the Peace, except station-house justices shall receive from the county more than ten dollars for his services in any one month in criminal cases. This is the feature of the Act which the plaintiff assails so vigorously; but when it is remembered that it touches him in that spot which is so proverbially tender, the earnestness and the apparent full conviction in the justice of his cause, with which he has enforced his contentions, are calculated to win a more patient consideration than perhaps the case would otherwise be entitled. But whether in themselves or for any other reason the questions here presented are entitled to serious consideration, they have received it at our hands, and we proceed to state our conclusions and our reasons therefor as briefly as possible.

The validity of the Act of 1900 is assailed, as we understand the argument of the plaintiff, upon three grounds, first, that it is class legislation and violates the provisions of the Fourteenth Amendment of the Constitution of the United States, because it denies to the citizen the equal protection of the law; second, that it is in violation of sec. 33, Art. 3 of our State Constitution which prohibits the passage of a special law for any case for which provision has been made by existing general law, and lastly, because it violates sec. 29 of Art. 3 of our Constitution which provides that every law passed by "the General Assembly shall embrace but one subject, and that shall be described in its title." It will be perceived, therefore, that the plaintiff plants himself upon the Fourteenth Amendment of the Constitution of the United States and certain provisions of our State Constitution, and hence it will not be surprising if, as we have already said, the questions at issue, can be solved by the application of established principles which have been announced in well considered adjudications of this and other Courts of last resort.

1. Can the Act in question be considered such class legislation as is prohibited by the provisions of the Fourteenth Amendment?

The principles involved in this inquiry have so recently and so fully been examined and declared in the cases of *Ulman* v. *Balt.*, 72 Md. 596, and the *State* v. *Broadbelt*, 89 Md. 565, that we do not deem it necessary to discuss them elaborately.

In the first place before considering the effect of the Fourteenth Amendment it can hardly be contended that the sections in question, so far as they regulate or prescribe the compensation of the plaintiff for services rendered by him as a Justice of the Peace, are invalid under our Constitution, for by Art. 4, sec. 42, of that instrument it is provided that all Justices of the Peace shall have such compensation "as hath been heretofore or may hereafter be prescribed by law." Unless therefore plaintiff's contention be based upon one or other of the remaining grounds relied on namely, either because it is a special law or its title is defective, he must fail, unless his position is sustained by the Fourteenth Amendment.

We have been unable to understand in what manner our legislation violates this Amendment.   By this legislation no person is deprived of life, liberty or property without due process of law nor is any one denied the equal protection of the laws, unless it be true, as contended by the plaintiff that he is deprived of just compensation, "and the citizen is placed in serious jeopardy of being torn from his family charged with crime and brought before a tribunal, which tribunal will receive no remuneration for its services, except by conviction of the traverser, however innocent."

The plaintiff surely has no right to complain so long as he receives such compensation as the State chooses to prescribe. While his office is one which existed at common law, yet our Constitution places it within the power of the Legislature to prescribe his duties and compensation.   It would certainly be an extreme and hitherto unheard of extension of the Fourteenth Amendment to hold that by it the State is deprived of the power to say whether a Justice of the Peace shall receive $10 or $100 per month in criminal cases.   It is one thing to prescribe what salary a public officer shall receive for services to be performed and a very different thing to undertake by legislation to deprive him of legal compensation for services already rendered.   This Act provides only for the former, and so long as the plaintiff and those who like him hold the State's commission and authority to act as a Justice he and they must be satisfied with the compensation provided by the Legislature.   Or as was said in a case, in which it was contended, as it is here, that it was illegal, wrongful and unjust to deprive a public officer of compensation for his services, "While it may be that Justices of the Peace have in fairness a right to be paid for services which they render to the people in the discharge of duties imposed on them by law, it must be remembered that they take their offices *cum onere* and they hold them under an implied contract to perform the duties upon the terms, as to costs and fees, ordained by the statute. If they shall receive nothing for the performance of certain duties, they suffer in common with many other officials in

various instances, who have duties and sometimes some new and onerous ones, imposed upon them, without any provision for remuneration being made." *Bruner* v. *Madison County*, 3 Ill. Reps. 15. But it is said the citizen may, by the operation of this law, be denied justice and deprived of his liberty, because by its operation the Justice in order to increase his compensation may be induced to convict when in justice he should acquit. We cannot recognize the force of this suggestion, founded as it is upon the assumption that the Justices will violate their oaths and the duties of their office, and not upon anything that the law authorizes to be done. Such conduct, resulting it is said in a denial of justice and a deprivation of liberty of the citizen would be such a gross violation of every moral as well as legal duty that it is not necessary to say it is not authorized by the legislation complained of and, therefore, affords no ground for declaring it invalid. *Ulman* v. *Mayor*, 72 Md. 596. Again it is suggested that the provisions of this Act are more favorable to some Justices who render but slight services for the prescribed compensation than to others who for the same compensation render greater and more valuable services. Under no form of government or system of laws known to man is it possible for every individual to possess the same privileges as every other person. Hence, as is said in *State* v. *Broadbelt, supra,* the scope of the Fourteenth Amendment so far as it guarantees the equal protection of the law has been thus stated by JUDGE COOLEY; and the proposition is supported by abundant authority. "The amendment contemplates classes of persons and the protection given by the law is to be deemed equal if all persons in the same class are treated alike under like circumstances and conditions, both as to privileges conferred and liabilities imposed. The classification must be based on reasonable grounds; it cannot be a mere arbitrary selection." It does not follow therefore that because the Act in question limits the plaintiff's compensation it is unconstitutional if it affects, as it does, all other Justices in his class in the county in the same way.

And so it may be said that as the Act is general in its operation as to the class to which the plaintiff belongs as public officer so it is equally general and equal in its application to every citizen of the State who becomes amenable to the criminal law.   We can see nothing unfair, unjust or unreasonable in these classifications.

It was also argued that this law favors specially the commissioners of Baltimore County, and grants that body privileges and rights that no one else in the State enjoys.   But this argument seems to ignore the fact that these commissioners are acting as the legal representatives of that political division of the State known as Baltimore County and assumes without any warrant for such assumption that they are parties to all criminal proceedings before magistrates.   When the State declares that the commissioners shall be liable for costs only to a limited extent, it is the same as if it had made such a provision for its own benefit.   It cannot be doubted that if it thinks proper to do so the State can declare by the Legislature that neither it nor the county shall pay any portion of such costs.   The whole question of compensation has by our Constitution been placed in the hands of the Legislature and if none is provided none can be recovered.   " It is doubtless true " said the Supreme Court of Illinois in *Bruner* v. *Madison Co.*, *supra*, "that compensation for official services rendered in behalf of the State or for any public corporation must rest upon statutory enactment or contract."   And this is unquestionably so, when, as we have said, the power to prescribe compensation has been given to the Legislature.   In fact the claim set up by the plaintiff in this case is based entirely on statute ; but the same power which enacted the law relied on can repeal it or repeal and re-enact with amendments, unless prohibited by our Constitution.

2. This brings us to the second question.   Is the Act of 1900 a special law within the meaning of sec. 33, Art 3, of the Constitution of Maryland, which provides that no special law shall be passed for any case in which provision has been made by an existing general law.

This question is controlled by the leading case upon the subject of *Webster* v. *Co. Commrs. of Balt. Co.*, 29 Md. 519, in which it was held that the Act of 1868, chap. 411, relating to roads in Baltimore County is not a *special law* in any sense of the term, but a public local law, as distinguished from a public general law, and is not in conflict with sec. 33 of Art 3 of the Constitution.

The Act of 1900, here in question, is a public local law of Baltimore County, and belongs to the same class of statutes as those it repealed which are confessedly local laws of that county. In the language of JUDGE ALVEY in the case just cited, "The special laws contemplated by the Constitution are those that provide for individual cases. Local laws of the class to which the Act under consideration belongs, on the other hand, are applicable to all persons, and are distinguished from public general laws only in that they are confined to certain prescribed or defined territorial limits, and the violation of them, must, in the nature of things, be local. It is not, therefore, by any means, necessary, in order to give a statute the attributes of a public law, that it should be equally applicable to all parts of the State. All that is required to make it a public law of general obligation, is, that it shall apply to all persons within the territorial limits described in the Act. That is the character of the Act before us and of that large portion of the statute law of our State comprised in the codified division under the title of "Public Local Laws." See also *Co. Commrs. of Dorchester Co.* v. *Meekins*, 50 Md. 39.

3. Finally does the Act of 1900 violate Art. 3, sec. 29, which provides that "Every law enacted by the Legislature shall embrace but one subject and that shall be described in its title." The learned Judge below disposed of this question briefly and satisfactorily thus: "The subject of this legislation in my opinion is *one*, viz., the *regulation* of the number, jurisdiction, duties and compensation of certain public officers in Baltimore County, to wit: Justices of the Peace and Constables." With this view we agree. We discover no defect in the title of this Act. It was passed to repeal certain sec-

tions of the local law of Baltimore County, sub-title, "Justices of the Peace and Constables" and to re-enact said sections with amendments and to add certain new sections and to repeal certain other Acts which had not been codified. The law relating to and regulating the duties of Justices and Constables has been always considered as *one subject,* and has been so treated in the Constitution of the State and the local law itself.

*Judgment affirmed with costs.*

(Decided July 1st, 1903.)