WM. L. CLARK, Sheriff of Harford County, *vs.* THE
HARFORD AGRICULTURAL AND BREED-
ERS' ASSOCIATION.

*Injunctions: criminal proceedings. Horse racing and betting:
Racing Commission: Ch. 132 of the Acts of 1912; con-
struction of—; not officers of trust and profit in
constitutional sense; no oath of office neces-
sary; appointment of Commission not a
delegation of legislative power.*

Where property rights would otherwise be destroyed, contem-
plated interference by criminal proceedings under a void law,
may be enjoined by a Court of Equity.              p. 614

The members of a racing commission appointed by Ch. 132
of the Acts of 1912 are not required by that Act to take
any oath of office, and as no civil commission was issued to
them, they do not come under sec. 11 of Art. 70 of the Code
(1904) relating to the oath of office required by the Constitu-
tion.                                              p. 617

The Act of 1912 does not create a public office, or convey upon
the racing commission as individuals, the powers and duties
that are committed to the commission itself as a board or
*quasi* corporation.                               p. 617

The racing commission acts by a majority vote of its members,
and the individual members exercise no powers except by
and through a majority of the body itself.         p. 617

Members of the racing commission are not persons elected or
appointed to an office of profit or trust under the Constitu-
tion or under the laws passed pursuant thereto, within the
meaning of Art. 1, Sec. 6, of the Constitution, and, inde-
pendent of statute, are not required to take and subscribe to
the oath before entering upon their duties.        p. 619

Laws regulating, restricting or altogether forbidding horse
racing, bookmaking, etc., are within the police power of the
State.                                             p. 620

The Legislature may, under certain conditions, create classes, and subject all persons coming within the classification to burdens and duties not imposed upon individuals outside of the classes.                                         p. 620

But such classification can not be mere arbitrary selection, it must be reasonable and rest upon some difference which bears a reasonable and just relation to the Act in respect to which the classification is proposed.                         p. 620

The restrictions imposed by Ch. 132 of the Acts of 1912, upon horse racing, providing that no person, association or corporation shall hold or conduct any meeting in Harford County, at which horse racing shall be permitted for any purse or stake, etc., except corporations formed for the purpose of racing, developing or improving the breeding of horses, or regularly incorporated agricultural associations, or associations for conducting city and State fairs, or regularly organized hunt clubs, are not unconstitutional as creating class legislation; the Act provides for a selection and designation so as to promote and safeguard the object and purposes of the Legislature.                         pp. 620-621

The Act was not intended to suppress horse racing or prohibit betting thereon, except as limited by that and other preceding acts.                                         p. 620

The Act did not repeal the entire law with regard to racing, betting, bookmaking or pool selling on horse races even so far as Harford County was concerned; but merely substituted a commission as the source from which the license should emanate in lieu of that provided by the general law.   p. 621

The fact that under the Act the commission is self perpetuating, is no objection to its constitutionality; the commission is the creature of the Legislature and the method of their appointment may be amended or repealed by the Legislature at any time.                                         p. 622

The Act is not unconstitutional as a delegation of the right of the Legislature; by the Act the Legislature provides certain rules to govern in the conduct of horse racing and betting on horse races, and the commission is appointed to supervise such races and betting and to make rules and regulations to that end.                                         p. 623

610 CLARK vs. HARFORD AGRI. & BREED. ASSO.

The wisdom and policy of legislation is not for the Courts, but is a matter for the legislative branch of the State.    p. 623

*Decided November 15th, 1912.*

Appeal from the Circuit Court for Harford County (HAR-LAN, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS and STOCKBRIDGE, JJ.

*Edgar Allan Poe, the Attorney-General,* for the appellant.

*Philip H. Close* and *S. A. Williams,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

On the 24th of September, 1912, the Harford Agricultural and Breeders' Association, a corporation, duly incorporated under the General Laws of the State, and the plaintiff below, filed the bill in this case, for an injunction to restrain the defendant Wm. L. Clark, the sheriff of Harford county, from interfering with the plaintiff corporation, or any of its officers, in the conduct of a race meeting being held at the time near Havre de Grace, in Harford county, and from arresting any person or persons engaged in taking bets or in book-making or in betting at this meeting.

The application for injunction was set for hearing on the bill, and after argument by counsel for the plaintiff and defendant, an injunction was directed, on the same day to be issued, in accordance with the prayer of the bill.

By an agreement of counsel, filed in the case, it was agreed that the bill of complaint should be considered as amended by adding to the end of paragraph 11, the following: "And that in fact, the members of said Racing Commission did not take and subscribe the oath prescribed by section 6 of Article 1 of the Constitution.

The docket entries as set out in the record contain the following entries: Sept. 25, 1912.—Injunction writ issued and copy Court's order attached. Process, sum'nd. Writ of injunction accepted by Wm. L. Clark, sheriff of Harford county, on the 25th of September, 1912. On September 27, 1912.—Demurrer of defendant, filed. Same day.—Order filed to enter an appeal to the Court of Appeals from the order of the Court dated the 24th day of September, 1912, granting writ of injunction.

No point, however, was made at the hearing in this Court upon the state of the pleadings, or the scope of the order for injunction, but as the decision of the case will ultimately turn upon the validity or invalidity of the Act of 1912, Chapter 132, and the validity of the Racing Commission, as constituted by the Act, we shall proceed to consider the questions of law raised on the record, and by the various contentions of the parties to the suit.

The facts of the case appearing from the record, that are necessary to be stated for the purposes of this opinion, are these.

At the January Session, 1912, of the General Assembly of Maryland, an Act was passed (Chapter 132, Acts of 1912), the title of which is as follows: An Act to provide for the regulation, control and licensing of horse racing within Harford county, to create the Harford County Racing Commission and prescribe its powers and duties, to provide license fees for the conduct of horse racing within said county and to repeal sections 204, 205 and 206 of Article 27 of the Code of Public General Laws of Maryland of 1904, title "Crimes and Punishments," sub-title "Gaming," said section 206 having been amended by Chapter 127 of the Acts of the General Assembly of Maryland of 1906, so far as said sections apply to Harford county.

It appears from the record and it is admitted by the pleadings in the case, that the plaintiff is a Maryland corporation and organized for the purpose of conducting, driving and running races and maintaining a race track in Har-

ford county and other kinds of public exhibitions, not pro-
hibited by law.

It further appears that four members of the Racing Com-
mission, named by the Act, accepted their appointment, and
on the 10th of May, 1912, met and duly organized under the
law. That one, Robert C. Richardson, named as a member
of the Commission, declined to serve, but on the 2nd day of
September, 1912, Lewis J. Williams was elected as his suc-
cessor and has since that date acted as a member of the Com-
mission; that James T. Jones was elected president, and
Thomas C. Hopkins, was made secretary and treasurer of
the Commission and are now acting as such officers, but in
fact, the members of the Commission did not take and sub-
scribe the oath prescribed by section 6 of Article 1 of the
Constitution.

The bill avers that on the 20th day of May, 1912, the
plaintiff applied to the Racing Commission for a license to
hold race meetings under the Act, and on the 14th day of
August a license was granted it to hold meetings on the dates
named therein.

The bill further avers that the plaintiff, in pursuance of
the permission and the privilege granted by the license, and
in preparation for the race meeting, purchased a large piece
of land in the Second Election District of Harford County,
and expended a sum in excess of eighty thousand dollars in
preparing the land for the race meeting; that the meetings
were opened on the 24th of August, 1912, and continued
successfully until and including the 21st of September, 1912.

The bill also avers that amongst other privileges sold dur-
ing the meeting was the privilege to book-makers, of whom
there are more than twenty, to conduct betting or pool-selling
on the races, and the privilege was to continue during the
thirty days of the meetings; that the owners of horses were
induced to send their horses to the meetings by the stakes
and purses which were advertised by the plaintiff, and the
privileges granted to the book-makers and others were valu-
able and brought revenues to the plaintiff because of the

length of the meeting, and each day of the continuance of the meeting is important in enabling the plaintiff to fill its engagements with the horse owners and renters of the privileges.

By the seventh paragraph of the bill it is averred that for the privilege of conducting the meetings the plaintiff has paid to the said Racing Commission a large sum of money—that is to say, the sum of forty-four hundred and seventy dollars ($4,470), and in addition thereto has paid to the Treasurer of Harford County the sum of twenty-four hundred and seventy-nine dollars and five cents ($2,479.05), the same being five per cent. of the gate receipts at the meetings up to and including the 21st day of September, as required by the Act, and the plaintiff has, in all respects, complied with the law and all other laws of the State of Maryland, and is entitled under the license to complete its meetings and to conduct its races and permit betting, up to and including the 30th day of September.

The bill then charges that the law officers of the State have advised the defendant, the Sheriff of Harford County, that the racing meetings of the plaintiff are illegally held, and that betting and book-making is illegally permitted upon its grounds, because the members of the Commission failed to qualify by taking the oath required by the Constitution of the State, and that therefore the members of the Commission refused to accept the office, and all their acts are void. That the defendant has been instructed to cause the arrest of all persons betting, conducting betting, book-making or pool-selling at the meeting and of the officers of the plaintiff who permit the same.

The bill also avers that it will work an irreparable injury, for reasons alleged in the bill, should the plaintiff be prevented from holding the meetings for the remaining six days, and from permitting the exercise of the privileges which have been granted and let by it, and that the plaintiff is without remedy at law, as against these threatened wrongs

and trespass, and is entitled to the interposition of a Court of Equity, by the writ of injunction, to prevent the same.

The prayer of the bill is:

1. That the plaintiff's right under the license mentioned may be established; and

2. That the validity of the acts of the Harford County Racing Commission may be determined and established; and,

3. That the defendant and all persons acting by and under him may be restrained by injunction from interfering with the plaintiff or its officers in the conduct of the race meeting and from arresting any person or persons engaged in taking bets or in bookmaking or in betting at the meeting;

4. And for all such other and further relief as its case may require.

Having thus fully set out the facts of the case, as made by the bill, we come now to consider the questions of law, as presented on the appeal.

There can be no doubt, it seems to us, upon both principle and authority, that a Court of Equity has jurisdiction to grant an injunction to stay and restrain a criminal proceeding where it is necessary to protect property rights and where those rights would be destroyed by such prosecution.

In *Dobbins* v. *Los Angeles,* 195 U. S. 223, it is said: "It is also urged by the defendants in error that a Court of Equity will not enjoin prosecution of a criminal case, but as we have seen the plaintiff in error in this case had acquired property rights which by the enforcement of the ordinance in question would be destroyed and rendered worthless. If the allegations of the appellee be taken as true, she had the right to proceed with the prosecution of the work without interference by the city authorities in the form of the arrest and prosecution of those in her employ. It is well settled that where property rights will be destroyed, unlawful interference by criminal proceedings under a void law or ordinance may be reached and controlled by a decree of a Court

of Equity." This doctrine announced in *Dobbins* v. *Los Angeles, supra,* is well settled law and established by numerous cases and text-writers: *Davis F. Mfg. Co.* v. *Los Angeles,* 189 U. S. 217; *Daly* v. *Elton,* 195 U. S. 343; *Base Ball Co.* v. *New Orleans,* 7 L. R. A. (N. S.) 1014; *High on Injunctions,* Vol. 1, 68; *Page* v. *Baltimore,* 34 Md. 559; *Deems* v. *M. and C. C.,* 80 Md. 172.

In the case at bar, assuming that the Act of 1912, Ch. 132, is valid and constitutional, then it repealed in terms sections 204, 205 and 206 of Article 27 of the Code (1904), sub-title "Gaming," so far as said sections apply to Harford County.

In *Mayor, etc.,* v. *Radecke,* 49 Md. 217, JUDGE MILLER said: "As to the question of jurisdiction we have no doubt. It has been decided by this Court in too many cases to be longer open to question that, where a municipal corporation is seeking to enforce an ordinance which is void, a Court of Equity has jurisdiction at the suit of any person injuriously affected thereby to stay its execution by injunction." And this mode of procedure in like cases has been approved and sanctioned by this Court in *Deems* v. *M. and C. C.,* 80 Md. 172; *Holland* v. *Balto.,* 11 Md. 187; *Page* v. *Balto.,* 34 Md. 558; *Bouldin* v. *Balto.,* 15 Md. 18; *Balto.* v. *Porter,* 18 Md. 284. And to the same effect are the cases of *Ex parte Young,* 209 U. S. 165; *St. Louis and San F. R. R.* v. *Gill,* 156 U. S. 649; *U. S.* v. *Lee,* 106 U. S. 196; *Davis* v. *Gray,* 16 Wall. 203; *Osborn* v. *Bank,* 9 Wheat. 738; *Smyth* v. *Ames,* 169 U. S. 466; *In re Sawyer,* 124 U. S. 200.

But it is urged upon the part of the appellant that the Court below committed an error in granting the injunction, first, because there never was any legally constituted Racing Commission under the Act of 1912, Chap. 132, because the members of the Commission failed to take and subscribe to the oath prescribed by section 6 of Article 1 of the Constitution, and therefore the license granted by the Commission to the plaintiff was null and void and afforded it no protec-

tion; secondly, because Chapter 132 of the Acts of 1912, is unconstitutional, illegal and void, and therefore the license issued thereunder was null and void, and afforded no protection to the plaintiff or its officers or persons betting or conducting betting, book-making or pool selling at the race meetings.

The question raised by the appellant's first contention is one of public importance and is presented on this record for the first time before this Court.

The question, briefly stated, is this, are the members of the Racing Commission appointed by the Act of 1912, Chapter 132, persons "elected or appointed to any office of profit or trust under the Constitution or under the laws made pursuant thereto," and as such required to take and subscribe the oath required by the Constitution before they enter upon the duties of the position to which they were appointed.

Section 6, Article 1, of the Constitution provides, that every person elected or appoinetd to any office of profit or trust, under this Constitution or under the laws made pursuant thereto, shall before he enters upon the duties of such office take and subscribe the following oath.

Section 7, Article 1, declares that every person hereafter elected or appointed to office in this State, who shall refuse or neglect to take the oath or affirmation of office provided for in the sixth section of this Article shall be considered as having refused to accept the said office, and a new election or appointment shall be made, as in case of refusal to accept, or resignation of an office.

The case of *Sappington* v. *Slade,* 91 Md. 640, relied upon by the appellant, and urged in argument, differs from this, in that the statute creating the Board of Supervisors of Elections of the counties and the City of Baltimore provided in terms that before entering upon the duties of their office they should each take and subscribe the oath prescribed in the sixth section of the first Article of the Constitution, and also an oath to perform faithfully and honestly the duties imposed upon them by law. Acts of 1896, Chap. 202, sec. 3.

Besides this, a civil commission was issued by the Governor to each supervisor and was sent by the Secretary of State to the clerks of the respective Circuit Courts, and they were required by law to deliver them immediately to the persons to whom the commissions were directed and who might apply for them.

Sec. 11 of Art. 70 of the Code (1904) also provided that any person whether elected or appointed to office who shall decline or neglect to take and subscribe the oaths prescribed by the Constitution, for the period of thirty days from the date when the commission of such officer has been received at the office of the clerk, * * * , shall be deemed to have refused said office. The clerks of the Courts are also required to report to the Secretary of State at least once a month the names and offices of all officers who have not taken and subscribed the oath, as required by law, to be taken before them. Code of Public General Laws, 1904, Article 17, sections 67, 68, 69.

There is no provision in the Act now in question requiring the members of the Racing Commission appointed by the Act to take an oath of office, and as no civil commission was issued to them, they mainfestly do not come within the requirements of the Code just stated.

There is nothing in the Act itself now before us to indicate an intention upon the part of the Legislature to create or establish a public office, or to confer upon the Racing Commission as individuals the powers and duties that are committed to the commission itself, as a board or *quasi* corporation. The commission must act by a majority vote, and like other boards, or corporations, the individual members thereof exercise no powers except by and through a majority of the body itself. It was not the design or the purpose of the Act, that the members of the commission should be independent officers, or to impose upon them, personally, the powers and duties that were committed to the commission itself under the Act. In other words, the Legislature created a commission and invested it with power and authority to

carry out and make effective the purposes of the Act, and while a corporation was not created by the Act, it was not contemplated that the members of the commission should be independent officers or persons, otherwise, then as members of a *quasi* corporation, and it was not intended that they should act as individuals.

It is conceded, that the members of the commission are not civil officers, but it is contended that they are persons who hold an office of profit and trust. and come within the purview of sec. 6 of Article 1 of the Constitution.

In *School Commissioners* v. *Goldsborough,* 90 Md. 193, this Court held, that School Commissioners, as members of the respective school boards of the State, were not civil officers, and they were not required, as they would have been if the lawmakers supposed they were civil officers to take an oath to support the Constitution of the State or the United States. There was nothing in the school law requiring them to take an oath of office. JUDGE McSHERRY, in delivering the opinion of the Court, said: "Speaking generally, it may be said that a public office is an agency for the State and the person whose duty it is to perform this agency is a public officer. This we consider to be a true definition of a public officer, in its original broad sense. The essence of it is the duty of performing an agency, that is, of doing some act or acts or series of acts for the State." "The nature of the duties, the particular method in which they are to be performed, the end to be attained, the depository of the power conferred and the whole surroundings must be all considered when the question as to whether a position is a public office or not is to be solved."

"Civil officers, therefore, are governmental agents—they are natural persons—in whom a part of the State's sovereignty is vested or reposed to be exercised by the individual so entrusted with it for the public good. The power to act for the State is confided to the person appointed to act; it belongs to him upon assuming the office; he is clothed with the authority which he exercises and the official acts done by

him are done as his acts and not as the acts of a body corporate."

In *Baltimore City* v. *Lyman,* 92 Md. 611, this Court held. that the Superintendent of Public Instruction was not a municipal official within the meaning of the City Charter.

In *Bunn* v. *The People,* 45 Ill. 397, it was held, that commissioners to build a State House were not officers because among other things there was no intention manifest in the Act itself to establish an office.

In view of the authorities cited and after a careful examination of the Act itself, creating the Racing Commission of Harford County, we hold, that the members of the commission are not persons, elected or appointed to an office of profit or trust under the Constitution or under the laws made pursuant thereto, within the meaning and contemplation of Article 1, sec. 6, of the Constitution, and not being such persons, they were not required, independent of statute, to take and subscribe the oath required by the Constitution before entering upon the duties of their office, as members of the commission.

It is contended, however, that the Act in question is invalid and unconstitutional for certain reasons, and they are, first, because the Act creates an arbitrary and unreasonable classification in that it provides, by the fifth section of the Act, that, "No person or persons, association or corporation shall hereafter hold or conduct any meeting in Harford county whereat horse racing shall be permitted for any stake, purse or reward, except corporations formed for the purpose of racing or developing or improving the breed of horses, regularly incorporated agricultural associations, or associations for conducting county, city or state fairs, or associations of regularly organized hunt clubs."

Second, that the Act is illegal, because it authorizes the Commission to fill all vacancies occurring in the Commission and to appoint their successors; and,

Third, because legislative powers are conferred upon the Commission.

There can be no question that the Legislature, may, as was said by this Court in *Luman* v. *Hitchens Bros. Co.,* 90 Md. 25, under conditions create classes, and subject all persons coming within the classifications to burdens or duties not imposed upon individuals outside of the classes. These classifications however, must not be arbitrary or unreasonable, but must rest upon some difference which bears a reasonable and just relation to the Act in respect to which the classification is proposed. JUDGE COOLEY, in his work on *Constitutional Limitations,* 249, says: "The guaranty of equal protection is not to be understood, however, as requiring that every person in the land shall possess the same rights and privileges as every other person. The amendment contemplates classes of persons and the protection given by the law is to be deemed equal if all persons in the same class are treated alike under like circumstances and conditions, both as to privileges conferred and liabilities imposed. The classification must be based on reasonable grounds; it can not be a mere arbitrary selection. *Hays* v. *Missouri,* 120 U. S. 68; *Barbier* v. *Connolly,* 113 U. S. 31; *St. Louis and San F. R. Co.* v. *Mathews,* 165 U. S. 1.

The State can through its Legislature by the proper exercise of its police powers pass such laws and regulations as it may deem necessary to control, regulate and restrict horse-racing, book-making and betting at race tracks or it may abolish the same altogether. *Singer* v. *State,* 72 Md. 466; *Long* v. *State,* 74 Md. 568; *Cochran* v. *Preston,* 108 Md. 227; *State* v. *Broadbelt,* 89 Md. 578.

The object and purpose of the Act, in question, was to restrict and to regulate horse-racing, pool-making and betting at such races in Harford county and to limit it to certain corporations formed for this purpose, and to certain associations, mentioned in the 5th section of the Act. The control was put in a Commission appointed by the Act, and with power to license those who would conduct the racing, under the provisions of the Act. The restriction was not, therefore, by any way of class discrimination, but by selec-

tion and designation, so as to promote and safeguard the object and purposes of the legislation.

It is apparent, both from the previous legislation in this State, and from the Act of 1912, that it was not the intention of the Legislature to suppress horse-racing or to prohibit betting thereon, except as limited by the various Acts. Sec. 203, Art. 27, Vol. 1, *Code* 1904; *James* v. *State,* 63 Md. 242; *State* v. *Dycer,* 85 Md. 246; *Spies* v. *Rosenstock,* 87 Md. 18; *Acts of* 1882, Chap. 271; 1890, Chap. 206; *Acts of* 1894, Chap. 232; 1902, Chap. 572; *Acts of* 1906, Chap. 127; 1898, page 842, Chap. 285; *Acts of* 1912, Chap. 77; 1912, Chap. 132.

The only real difference between the provisions of the Public General Laws as they were at the time of the enactment of the Act of 1912 and the Act under consideration, lies in the method by which the license may be granted. The Act involved did not repeal the entire general law with regard to betting, book-making and pool-selling on horse races, even so far as Harford county was concerned, but merely substituted a commission as the source from which the license should emanate, in lieu of that provided by the general laws. Section eight of the Act then provided that the license shall be for all purposes in substitution for that theretofore required by law. In any criminal prosecution such a provision would necessarily be given a liberal interpretation, and must be regarded as superseding the provisions of the general law, in so far as the granting and effect of the license is concerned.

While the classifications under the Act, are in some respects necessarily special in their character, we do not think, they afford a proper ground for complaint because they are just and reasonable, and in no way arbitrary. In other words, "they operate alike upon all persons and property under the same circumstances and conditions, and bear a reasonable and just relation to the Act in respect to which classification is proposed." *Storck* v. *Balto. City,* 101 Md. 484.

The Act in question, is founded and based upon the right of the State, in the exercise of its police power, to regulate and control horse-racing and book-making on such races. *State* v. *Broadbelt,* 89 Md. 582; *Jones* v. *Brim,* 165 U. S. 180; *Barbier* v. *Connolly,* 113 U. S. 31.

We find no force in the second objection to the Act, to wit, that the Commission is self-perpetuating. Four of the Commissioners named in the Act, have entered upon their duties and hold for a term of four years. The Commission is a creature of the Legislature and if the method of the appointment of their successors, is objectionable, the Act creating them can be amended or repealed in this respect by any Legislature and a new mode of appointment adopted. *Storck* v. *Balto.,* 101 Md. 476; *Anderson* v. *Baker,* 23 Md. 567; *Warfield* v. *County Commrs.,* 28 Md. 76.

The third objection, to wit, that legislative powers have been conferred upon the Commission, seems to have been settled by the Supreme Court of the United States in the cases of *Interstate Commerce* v. *Goodrich,* 224 U. S. 194, and *U. S.* v. *Grimaud,* 220 U. S. 514. In *Grimaud case,* JUSTICE LAMAR, said, the determination of such questions, however, was a matter of administrative details. He also said: From the beginning of the Government various Acts have been passed conferring upon executive officers the power to make rules and regulations, not for the government of their departments but for administering the laws which did govern. None of these statutes could confer legislative power, but when Congress had legislated and indicated its will it could give to those who were to act under such general provisions power to fill up the details by the establishment of administrative rules and regulations, the violation of which could be punished by the fine or imprisonment fixed by Congress or by penalties fixed by Congress or measured by the injury done.

In *Goodrich's case* the Court said: "Congress may not delegate its purely legislative power to a commission, but, having laid down the general rules of action under which a

commission shall proceed, it may require of that commission the application of such rules to particular situations and the investigation of facts, with a view to making orders in a particular matter within the rules laid down by the Congress. This rule has been frequently stated and illustrated in recent cases in this Court, and needs no amplification here. *Buttfield* v. *Stranahan,* 192 U. S. 470; *Union Bridge Co.* v. *United States,* 204 U. S. 384; *United States* v. *Grimaud,* 220 U. S. 506."

In the Act in question, it appears that the Legislature has laid down certain rules which are to govern in the conduct of horse-racing and betting on horse-racing; a Commission has been appointed by the Act, to supervise such races and betting; has indicated on general lines how the law is to be enforced and has directed the Commission to make rules and regulations to that end.

These facts, as stated by the Act, we think bring this case within the principles established and within the reasoning of the Supreme Court in the cases just cited, and they must determine the question here raised, on the appellant's third contention.

As to the policy and wisdom of this class of legislation, we express no opinion. This is a matter for the legislative branch of the State. If the Act is valid and free from constitutional objections, it is the duty of the Court to sustain it. If invalid, it would be our plain duty to strike it down and so declare.

We have examined the case with much care, and hold that the Act of 1912, Chap. 132, is a valid exercise of the police power, of the State, and for the reasons stated, it is free from the constitutional objections, urged against it, and this being so, the order appealed against will be affirmed.

*Order affirmed, with costs.*