# STATE OF MARYLAND

*vs.*

# JACOB S. SHAPIRO.

*Licenses: regulating occupations; need not be uniform for whole
State; Article* 15 *of Bill of Rights.   Local Laws:
exempting certain counties.   Statutes:
construction of——.   Junk dealers.*

Chapter 704, section 172, of the Acts of 1916, providing for
the licensing of junk dealers, imposes a tax upon an occupa-
tion, and is not a tax upon property, as to which the equality
provision of Article 15 of the Bill of Rights applies.        p. 172

It belongs to the class of taxes which that Article permits
to be laid, with a political view for the good government and
benefit of the community.                                    p. 171

The Legislature is under no constitutional obligations, either
Federal or State, to observe a definite rule of uniformity in the
enactment of its license laws.                               p. 171

It is not required to establish the same license system and
regulations for all the interests and political divisions over
which its authority extends.                                 p. 171

The Legislature has the right to make separate and definite
license provisions for distinct classes and areas.          p. 171

The exercise of such power does not conflict with the consti-
tutional right to the equal protection of the laws or to due
process of law, if the prescribed regulations operate equally and
uniformly upon the classes, within the area affected, and their
limitations are not clearly unreasonable.                   p. 171

To regulate license fees for occupations according to the popu-
lation of the county or city where the business is to be con-

ducted is an accepted theory of classification for license purposes. p. 172

Such classification must be presumed to be reasonable in the absence of clear and conclusive indications to the contrary.

p. 172

The policy of the State to enact local laws affecting only certain counties, or to exempt particular counties or localities from the operation of general laws, is one that is not prohibited by any provision of the Constitution of the State or of the United States. p. 173

In construing a statute, every presumption is to be made in support of the theory that the General Assembly has validly and properly exercised its powers. p. 173

The decision of the Legislature as to the proper amount for a license fee for an occupation will be upheld by the courts, in the absence of clear and convincing proof that the charge is in fact exorbitant and oppressive. p. 174

Dealing in junk is a distinct and recognized branch of commercial enterprise, the nature and incidents of which are commonly known and may be judicially noticed. p. 174

A junk dealer is one who is engaged in the business of buying and selling junk, which is defined to be "old iron, or other metal, glass, paper, cordage, or other waste or discarded material, which may be treated or prepared so as to be used again in some form." p. 174

*Decided June 27th, 1917.*

Appeal from the Criminal Court of Baltimore City. (GORTER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Albert C. Ritchie, the Attorney General,* and *Philip B. Perlman, Assistant Attorney General,* (with whom were *Wm.*

*F. Broening, State's Attorney for Baltimore City,* and *Lindsay C. Spencer, Assistant State's Attorney for Baltimore City,* on the brief), for the appellant.

*Henry M. Siegel,* for the appellee.

URNER, J., delivered the opinion of the Court.

The indictment in this case charges the defendant with unlawfully dealing in junk in Baltimore City without first taking out a license therefor as required by law. The statute alleged to be violated is the Act of 1916, Chapter 704, section 172, which, under the caption, "Junk Dealers," provides as follows: "Each person, firm or corporation dealing in junk within this State shall pay for the privilege of conducting such business by first taking out an annual license therefor, for each place of business and paying the following license fee, namely: In cities or counties of 50,000 inhabitants or over, each, per annum, $30.00; in cities or counties of 10,000 to 50,000 inhabitants each, per annum, $20; in cities or counties of 5,000 to 10,000 inhabitants each, per annum, $10; in Baltimore City, $250." By a later section of the Act a fine of $100 is directed to be imposed for the failure of one engaged in the business to procure the requisite license.

A demurrer to the indictment disputes the validity of the statute on the following grounds:

1.  That it violates the 14th Amendment of the Federal Constitution by attempting an exercise of taxing power which unjustly, arbitrarily and unreasonably discriminates against the defendant and all others similarly engaged in business in Baltimore City and in favor of other persons located elsewhere in the State, and which deprives the defendant and others in like situation of their liberty, property and business without due process of law and denies them also the equal protection of the law.

2.  That the Act violates the Constitution of Maryland for the reasons just stated, and also because the license re-

quired to be obtained by the defendant for his business in Baltimore City is an arbitrary and unequal tax imposed contrary to the 15th Article of the Bill of Rights, and is not a lawful exercise of the police power.

3. That the license fee attempted to be levied upon the defendant is an abuse of the police power of the State in that it is manifestly in excess of any legitimate charge for supervision or regulation of the business in which the defendant is engaged.

4. That there is no definition of the term "junk dealer" in the Act, and no fixed or certain popular meaning of the term, and hence the Act is void for uncertainty.

The appeal is by the State and is from a judgment discharging the defendant after his demurrer to the indictment had been sustained.

The license fee required by the Act of 1916 to be paid by a dealer in junk "for the privilege of conducting such business" is a tax imposed upon an occupation. It is not a property tax to which the equality provision of Article 15 of the Bill of Rights applies. It belongs to the class of taxes which that Article permits to be "laid with a political view for the good government and benefit of the community." *Ruggles* v. *State,* 120 Md. 562; *State* v. *Applegarth,* 81 Md. 300; *Rohr* v. *Gray,* 80 Md. 276.

The Legislature is under no constitutional obligation, either Federal or State, to observe a definite rule of uniformity in the enactment of its license laws. It is not required to establish the same license system and regulations for all the interests and political divisions over which its authority extends. It has the right to make separate and different provisions for distinct classes and areas. The exercise of such power does not conflict with the constitutional right to the equal protection of the laws, or to due process of law, if the prescribed regulations operate equally and uniformly upon the class, and within the area affected, and their limitations are not clearly unreasonable.

These principles have been firmly settled by the decisions. *Magoun* v. *Illinois Trust Co.,* 170 U. S. 283; *Budd* v. *New York,* 143 U. S. 517; *Barbier* v. *Connolly,* 113 U. S. 27; *Holden* v. *Hardy,* 169 U. S. 395; *German Alliance Ins. Co.* v. *Hale,* 219 U. S. 307; *Bowman* v. *Lewis,* 101 U. S. 22; *L'Hote* v. *New Orleans,* 177 U. S. 587; *Field* v. *Barber Asphalt Co.,* 194 U. S. 618; *Duncan* v. *Missouri,* 152 U. S. 377; *Amer. Coal Co.* v. *Allegany Co.,* 128 Md. 564; *Mt. Vernon Co.* v. *Frankfort Co.,* 111 Md. 561; *Clark* v. *Harford Agr. Assoc.,* 118 Md. 608; *Criswell* v. *State,* 126 Md. 103; *Sweeten* v. *State,* 122 Md. 634; *State* v. *Broadbelt,* 89 Md. 565; *Ruggles* v. *State,* 120 Md. 561.

The statute here in question provides different rates of license fees for the privilege of dealing in junk according to the population of the county or city where the business is being conducted. In Baltimore City, in which approximately one-half of the inhabitants of the State reside, the rate is two hundred and fifty dollars, while it ranges from ten to thirty dollars in the counties and other cities with their much smaller populations. There is nothing in the terms of the Act, or in the record, to reflect upon the propriety of such a provision. It is in fact based upon an accepted theory of classification for license purposes. *Commonwealth* v. *Danzinger,* 176 Mass. 290; *Douglas* v. *People,* 225 Ill. 536. It must be presumed to be reasonable in the absence of clear and conclusive indications to the contrary. *Bachtel* v. *Wilson,* 204 U. S. 36; *Holden* v. *Hardy; Mt. Vernon Co.* v. *Frankfort Co.; Ruggles* v. *State, supra.* Provision might have been made by independent local laws for the licensing of junk dealers in one or more of the political subdivisions of the State. The Courts would not be justified in declaring such statutes invalid merely because they were of local application or divergent in their terms. If this were a proper ground upon which to defeat an Act of Assembly, the validity of much important local legislation might be successfully disputed. As this Court had occasion to say in *Stevens* v.

*State,* 89 Md. 674: "It has long been the policy of the State of Maryland to enact local laws affecting only certain counties, or to exempt particular counties or localities from the operation of general laws." This policy is not prohibited by any provision of the Constitution of Maryland or of the United States. The fact, therefore, that the statute now being considered does not affect alike all the counties and cities to which it applies is not a sufficient reason for declaring it invalid.

The contention that the annual fee required to be paid by junk dealers in Baltimore City is unreasonable and excessive rests largely upon the theory that it is imposed in the effort to raise revenue under the guise of an exertion of the police power of the State, and that the amount of the fee is far beyond the legitimate costs incident to the regulation of the business. It is also urged that the law is unfair and arbitrary because it makes no distinction in reference to the volume of the business conducted by the licensees. The license provision under inquiry is plainly a revenue measure. It is enacted and codified under the head of "Traders' Licenses." It does not purport to have any relation to the police power, although in determining the amount of the fees to be paid by junk dealers the Legislature may properly have taken into consideration the fact that the business is an appropriate object of police supervision, especially in a large city, because of the opportunities it often affords for the disposition of stolen property. *Duluth* v. *Bloom,* 55 Minn. 101; 21 L. R. A. 689; *People* v. *Rosenthal,* 197 N. Y. 394; *City of Chicago* v. *Lowenthal,* 242 Ill. 404; *City of Grand Rapids* v. *Braudy,* 105 Mich. 670; *Marmet* v. *State,* 45 Ohio St. 63. The Court has no right to assume that these particular license charges specified in the Act before us are unreasonable exactions. There is no evidence in the record upon which we can base such a conclusion. Every presumption is to be made in support of the theory that the General Assembly has validly and properly exercised its powers. It

was possessed of full constitutional authority to legislate upon the subject of occupation taxes, and its action reflects its judgment that the fees imposed in this instance are fair and reasonable. Its decision of that question will be upheld by the Courts in the absence of clear and convincing proof that the charges are in fact exorbitant and oppressive. *Leser* v. *Wagner,* 120 Md. 677.

The cases of *Vansant* v. *Harlem Stage Co.*, 59 Md. 335, and *State* v. *Rowe,* 72 Md. 548, cited by the appellee, were not concerned with the validity of legislative acts, but with questions as to the right of a municipality to raise revenue under a charter power to license and regulate. This distinction was noted in the case of *State* v. *Applegarth,* 81 Md. 300.

There is no force in the contention that the Act is void as to the requirement of a license for "junk dealers" because the meaning of that term is left indefinite and uncertain. The business of dealing in junk is a distinct and recognized branch of commercial enterprise. Its nature and incidents are commonly known and may be judicially noticed. A junk dealer is one who is engaged in the business of buying and selling junk, which is defined to be: "old iron, or other metal, glass, paper, cordage, or other waste or discarded material, which may be treated or prepared so as to be used again in some form." *Webster's New International Dictionary; Century Dictionary;* 4 *Words & Phrases,* 3874; *Commonwealth* v. *Ringold,* 182 Mass. 309; *City of Duluth* v. *Bloom,* 55 Minn. 97. It was not necessary that the provision as to this class of licenses should have more specifically defined the business to which it is intended to apply.

None of the objections urged by the appellee against the validity of the license law under which he is indicted are in our judgment sustainable, and we must accordingly hold that the demurrer should have been overruled.

*Judgment reversed with costs and new trial awarded.*