## SALSBURG *v.* STATE

[No. 49 October Term, 1952.]

214

*Decided February 5, 1953.*

*Order staying mandate filed March 5, 1953, pending decision of Supreme Court of United States.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*Herbert Myerberg*, with whom were *Joseph Leiter* and *Louis M. Strauss* on the brief, for the appellant.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General, Albert J. Goodman, State's Attorney for Anne Arundel County,* and *C. Osborne Duvall, Assistant State's Attorney,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Julius Salsburg, who was convicted by the Circuit Court for Anne Arundel County of bookmaking on horse races, is challenging here the constitutionality of Chapter 704 of the Laws of 1951, which amends the statutory rule of evidence known as the Bouse Act, Laws 1929, ch. 194, by adding a proviso that the Act shall not prohibit the admission of illegally procured evidence in Anne Arundel County in prosecutions for violations of the State gambling laws.

The Act was also amended by Chapter 710 of the Laws of 1951, which provides that the Act shall not prohibit the admission of such evidence in Wicomico and Prince George's Counties. Thus the Act, as codified in Code 1951, art. 35, sec. 5, provides as follows:

> "No evidence in the trial of misdemeanors shall be deemed admissible where the same shall have been procured by, through, on in consequence of any illegal search or seizure or of any search and seizure prohibited by the Declara-

tion of Rights of this State * * *. Provided, further, that nothing in this section shall prohibit the use of such evidence in Anne Arundel, Wicomico and Prince George's Counties in the prosecution of any person for a violation of the gambling laws as contained in Sections 303-329, inclusive, of Article 27, sub-title 'Gaming', or in any laws amending or supplementing said sub-title."

Salsburg and two other men, Joseph John Rizzo and William Raynard Nicholson, were arrested by five officers of the Anne Arundel County Police Department on May 21, 1952, in a two-room building in the rear of a garage along the Governor Ritchie Highway at Brooklyn. When the police officers appeared on the scene, the front door was open but the door to the rear room was locked. They rapped on the door to the rear room, but, as no one answered, they broke the door open with an ax. Upon entering the room they arrested defendants and seized three telephones, two adding machines, racing forms and other paraphernalia. While the officers were in the building many telephone calls came from persons wanting to make bets.

Before the trial defendants filed motions to suppress the evidence and dismiss the proceedings. It was conceded that the police officers raided the building without a search warrant and that they seized the gambling paraphernalia illegally. Defendants contended that the 1951 amendment of the Bouse Act violates the Fourteenth Amendment of the Constitution of the United States, and that the paraphernalia were inadmissible under the Bouse Act as it stood before the amendment. The Court overruled the motions and admitted the paraphernalia in evidence. The Court thereupon found each defendant guilty and sentenced each to the Maryland House of Correction for six months and to pay a fine of $1,000.

On December 12, 1952, the Court of Appeals held, in an opinion by Chief Judge Markell, that Rizzo and

Nicholson could not complain of the illegality of the search and seizure, because they had no interest in the raided premises. Salsburg, on the other hand, testified that he was lessee of the building at the time of the raid. Therefore, the paraphernalia would be admissible as to him only in case the 1951 statute is valid. We ordered a reargument of his appeal on the question of the constitutionality of the statute. *Rizzo v. State,* 201 Md. 206, 93 A. 2d 280.

Prior to the enactment of the Bouse Act in 1929, this Court held that where evidence offered in a criminal trial is otherwise admissible, it will not be rejected because it was obtained illegally. *Meisinger v. State,* 155 Md. 195, 141 A. 536, 142 A. 190; *Heyward v. State,* 161 Md. 685, 158 A. 897; *Baum v. State,* 163 Md. 153, 161 A. 244. This is still the rule in prosecutions for felonies in this State. *Marshall v. State,* 182 Md. 379, 35 A. 2d 115; *Delnegro v. State,* 198 Md. 80, 86, 81 A. 2d 241, 244. The Bouse Act changed the rule only in trials for misdemeanors.

We find no reason to hold that the 1951 statute, making illegally procured evidence admissible in certain trials in Anne Arundel County, is in conflict with the Due Process Clause of the Fourteenth Amendment of the Federal Constitution or Article 23 of the Maryland Declaration of Rights. It is true that in *Weeks v. United States* (1914), 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, the United States Supreme Court held that evidence obtained in violation of the Fourth Amendment is inadmissible in the Federal courts. But in *Wolf v. People of State of Colorado* (1949), 338 U. S. 25, 69 S. Ct. 1359, 1361, 93 L. Ed. 1782, the Court explicitly stated that in a prosecution in a State court for a State crime the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure.

In explanation of the rule, Justice Frankfurter made the following comment: "The security of one's privacy against arbitrary intrusion by the police—which is at

the core of the Fourth Amendment—is basic to a free society. * * * Accordingly, we have no hesitation in saying that were a State affirmatively to sanction such police incursion into privacy it would run counter to the guaranty of the Fourteenth Amendment. But the ways of enforcing such a basic right raise questions of a different order. How such arbitrary conduct should be checked, what remedies against it should be afforded, the means by which the right should be made effective, are all questions that are not to be so dogmatically answered as to preclude the varying solutions which spring from an allowable range of judgment on issues not susceptible of quantitative solution."

Appellant vigorously protested that the statute, partially exempting Anne Arundel County from the operation of the Bouse Act, will tend to give encouragement to the county police to violate the law by invading private homes to make searches and seizures without a warrant. A similar protest was made by the defendant in *People v. Defore* (1926), 242 N. Y. 13, 150 N. E. 585, 588, 589, but the Court of Appeals of New York announced that it preferred the State rule to the Federal rule. In that case Judge Cardozo said in the opinion of the Court: "We are confirmed in this conclusion when we reflect how far-reaching in its effect upon society the new consequences would be. The pettiest peace officer would have it in his power through overzeal or indiscretion to confer immunity upon an offender for crime the most flagitious. * * * We do not know whether the public, represented by its juries, is to-day more indifferent to its liberties than it was when the immunity was born. If so, the change of sentiment without more does not work a change of remedy. Other sanctions, penal and disciplinary, supplementing the right to damages, have already been enumerated. No doubt the protection of the statute would be greater from the point of view of the individual whose privacy had been invaded if the government were required to ignore what it had learned through the invasion. The question is whether protec-

tion for the individual would not be gained at a disproportionate loss of protection for society. On the one side is the social need that crime shall be repressed. On the other, the social need that law shall not be flouted by the insolence of office. There are dangers in any choice."

We now pass to the important question whether appellant was denied the equal protection of the laws when the Circuit Court for Anne Arundel County, in accordance with the 1951 statute, admitted illegally procured evidence against him at his trial for gambling, while the law makes illegally procured evidence inadmissible in trials for the same offense in twenty counties and the city of Baltimore.

Ever since the beginning of our government, American political philosophy has been based upon principles of equality. Protection from unequal operation of the laws entitling a person to like privileges and burdens accorded to other persons in like circumstances is a basic American concept. It was thus natural that this concept was expressed in the guaranty of protection from arbitrary and unjust disparity of treatment contained in Federal and State Constitutions. The constitutional guaranty of equality is construed, however, to give full play to the powers of government so long as the exercise of those powers is clearly not an infringement of the rights of citizens.

The principal guaranty of equality in American Constitutions is the clause in the Fourteenth Amendment to the Federal Constitution which provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." This amendment was proclaimed to be in force July 28, 1868. It was nearly five years afterwards when the Supreme Court construed the Amendment in the *Slaughter-House Cases* (1873), 16 Wall. 36, 81, 21 L. Ed. 394, 410. The Amendment had been submitted to the people to give protection to the Negroes, who had been recently emancipated, but those cases raised questions of the extent

of the police power of the State and the granting of a monopoly. The Legislature of Louisiana had granted a monopoly of the slaughter-house business in New Orleans in favor of one corporation, thereby depriving many citizens of the right to engage in that business. The Court held that the statute did not violate any provision of the Fourteenth Amendment and that the subject of local monopoly was for the States, not for the Federal Government, to deal with. In referring to the Equal Protection Clause, Justice Miller said in the opinion of the Court: "The existence of laws in the States where the newly emancipated negroes resided, which discriminated with gross injustice and hardship against them as a class, was the evil to be remedied by this clause, and by it such laws are forbidden. * * * We doubt very much whether any action of a state not directed by way of discrimination against the negroes as a class, or on account of their race, will ever be held to come within the purview of this provision."

That prophecy proved to be false. The majority of the litigants who have invoked the Equal Protection Clause have charged discrimination in economic legislation, rather than race discrimination. It is now universally recognized that the Equal Protection Clause guarantees that equal protection shall be given to all persons under like circumstances in the enjoyment of their civil and personal rights; that all persons are equally entitled to acquire and enjoy property; that they shall have like access to the courts of the country; that no impediment shall be interposed to the pursuits of any person except as applied to the same pursuits by others under like circumstances; and that no greater burdens shall be laid upon one than are laid upon others in the same calling and condition. *Barbier v. Connolly,* 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923.

It has been held that the power of the Legislature to regulate a business or occupation cannot be exercised arbitrarily or in such a manner as to deprive a citizen of rights, privileges, or property to which he is entitled

as a matter of natural justice, except for the protection of some substantial public interest; nor can such power be exercised in such a manner as to impose upon members of a selected class burdens which are not shared by others in like circumstances. In so far as a statute grants privileges to or places burdens upon an individual, or limits his rights, especially his right to engage in a particular business or occupation, such statute may be invalidated by an arbitrary or unreasonable classification or discrimination in respect to territory. *Herbert v. County Com'rs of Baltimore County,* 97 Md. 639, 644, 55 A. 376; *Watson v. State,* 105 Md. 650, 655, 66 A. 635; *Clark v. Harford Agricultural & Breeders' Ass'n,* 118 Md. 608, 620, 85 A. 503; *Criswell v. State,* 126 Md. 103, 109, 94 A. 549. The classification must be reasonable and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, and the law shall apply equally to all persons similarly situated within the territory described in the act. *Ocampo v. United States,* 234 U. S. 91, 34 S. Ct. 712, 715, 58 L. Ed. 1231; *Royster Guano Co. v. Commonwealth of Virginia,* 253 U. S. 412, 40 S. Ct. 560, 64 L. Ed. 989; *Ft. Smith Light & Traction Co. v. Board of Improvement,* 274 U. S. 387, 47 S. Ct. 595, 597, 71 L. Ed. 1112. The classification is presumed to be reasonable in the absence of clear and convincing indications to the contrary, and the person attacking the classification has the burden of showing that it does not rest upon any reasonable basis but is essentially arbitrary. *Lindsley v. Natural Carbonic Gas Co.,* 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369.

In *State v. Shapiro,* 131 Md. 168, 173, 101 A. 703, it was held by this Court that a statute requiring different rates of license fees for the privilege of dealing in junk, according to the population of the county or city in which the business is conducted, does not deny any person the equal protection of the laws. On the contrary, in *Dasch v. Jackson,* 170 Md. 251, 269, 183 A. 534, the Court held that a statute providing for the

licensing and regulation of paperhangers in the City of Baltimore denied equal protection of the laws, because it had no substantial relation to the public health or safety and there was no rational basis for the territorial classification. Likewise, we held that the Strip Mining Act, Laws 1947, Sp. Sess., ch. 16, which discriminated between operators of coal mines in Garrett County and those in Allegany County, was unconstitutional because there was no difference in the conditions in the two counties that would make strip mining a menace to public health and safety in Allegany but harmless in Garrett, and there was no rational basis for the territorial classification and no justification for the discrimination. *Maryland Coal & Realty Co. v. Bureau of Mines of State,* 193 Md. 627, 69 A. 2d 471.

These principles have been recognized in cases dealing with statutes imposing licenses, taxes and other burdens in the exercise of the police power of the State. But those statutes are quite different from the statute now before us. This statute does no more than prescribe a rule of evidence.

It is true that one of the intermediate courts in New York has held that where a statute dealing with bastardy proceedings in all parts of the State outside of the City of New York permitted testimony of the defendant as to access by others without corroboration, another statute requiring corroboration of such testimony in proceedings brought in the City of New York was unconstitutional. *Commissioner of Public Welfare v. Torres,* 263 App. Div. 19, 31 N. Y. S. 2d 101. We are unwilling to base our decision on that opinion. The Equal Protection Clause contemplates the protection of persons or classes of persons against unjust discrimination by the State, but it has no reference to municipal or territorial arrangements made for different portions of the State that do not injuriously affect or discriminate between persons or classes of persons within the municipalities or counties for which such regulations are made. The State can establish any system of laws it sees fit

for all or any part of its territory, provided that it does not encroach on the jurisdiction of the United States, and does not abridge the privileges and immunities of citizens of the United States, or deprive any person of due process of law or equal protection of the laws. Thus it has been held that the Legislature has the power to declare that certain acts are criminal in some counties but not in others. *Davis v. State*, 68 Ala. 58, 44 Am. Rep. 128, 132; *People v. Hanrahan*, 75 Mich. 611, 42 N. W. 1124. For instance, the equal protection of the laws is not denied by a State local option law under which the traffic in intoxicating liquors may be made a crime in certain territory and permitted elsewhere. *State of Ohio ex rel. Lloyd v. Dollison*, 194 U. S. 445, 24 S. Ct. 703, 48 L. Ed. 1062.

In emphasizing the right of the State to establish its own system of laws, Justice Bradley said in *State of Missouri v. Lewis* (1880), 101 U. S. 22, 25 L. Ed. 989, 992: "If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the 14th Amendment, be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances. * * * If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the 14th Amendment, there is no solid reason why there may not be such diversities in different parts of the same State."

224

It has always been the policy of the State of Maryland to permit the enactment of local laws affecting only one county or the exemption of particular counties from the operation of general laws or some provisions thereof. *Stevens v. State,* 89 Md. 669, 674, 43 A. 929, 931; *Neuenschwander v. Washington Suburban Sanitary Commission,* 187 Md. 67, 48 A. 2d 593, 600. Moreover, the right of a citizen to have his controversies determined by existing rules of evidence is not a vested right. Rules of evidence relate to the remedies which the State provides for its citizens, and, like other rules affecting the remedy, they are subject at all times to modification by the Legislature. *Mobile, Jackson, & Kansas City R. Co. v. Turnipseed,* 219 U. S. 35, 31 S. Ct. 136, 55 L. Ed. 78; *Luria v. United States,* 231 U. S. 9, 34 S. Ct. 10, 58 L. Ed. 101. Rules of evidence are not a constituent part of any contract and are not of the essence of any right which a party may seek to enforce. Generally speaking, therefore, the State, having the right to control procedure in its courts, has the power to regulate the admissibility of evidence without denial of equal protection of the laws. *Illinois Central R. Co. v. Paducah Brewery Co.,* 157 Ky. 357, 163 S. W. 239, 242. We, therefore, conclude that the statute assailed by appellant does not violate the Equal Protection Clause.

For these reasons we hold that the paraphernalia, although procured by illegal search and seizure, were admissible. As we find no error in the ruling of the trial Court, the judgment of conviction will be affirmed.

*Judgment affirmed, with costs.*