(Opinion published 56 N. W. Rep. 579.)

---

CITY OF DULUTH *vs.* MAXIMILIAN BLOOM.

Submitted on briefs Oct. 16, 1893.   Reversed Oct. 20, 1893.

No. 8425.

**A city ordinance construed.**

A certain ordinance of the city of Duluth *held* to apply only to pawnbrokers' shops, and to secondhand stores, or shops of the class commonly known as "junk shops."

**A furniture store is not a junk-shop.**

Also, that a store in which furniture, both new and secondhand, is exclusively dealt in, is not a "junk-shop," within the meaning of the ordinance.

Appeal by defendant, Maximilian Bloom, from an order of the Municipal Court of the City of Duluth, *Roger S. Powell*, J., made August 10, 1893, denying his motion to vacate and set aside his conviction.

On June 3, 1893, Daniel Kenna made complaint on oath in the Municipal Court that Bloom carried on and conducted the business of dealer in second hand goods at No. 108 West First Street in Duluth, without having first obtained a license so to do, contrary to Ordinance No. 52 passed May 5, 1890.   A copy of this ordinance is printed in the margin.[1]   A warrant was issued and Bloom was arrested and plead, not guilty.   On the trial it was shown that

---

[1] DULUTH CITY ORDINANCE.

Sec. 1. No person or persons shall carry on or conduct the business or calling of pawnbroker or dealer in second hand goods within the City of Duluth without first having obtained a license so to do, under the penalty of twenty five (25) dollars for each offense.

Sec. 2. Any person who loans money on deposit or pledge of personal property or choses in action on condition of selling the same, or returning the

v.55m.—7

he kept a second hand store and dealt in new and second hand furniture, stoves, carpets, crockery and glassware. He was found guilty. A stay of proceedings for thirty days was granted and he was admitted to bail.

He made a case containing all the evidence, exceptions and pro-

same to the pledgor or depositor, or to their agents or assigns at a stipulated price, shall be deemed to be a pawnbroker.

Sec. 3. Any person wishing to engage in pawnbroking within the City of Duluth, shall make application to the Council of said city for a license, stating the place in said city where he proposes to carry on said business, and shall accompany his application with a bond in the sum of two thousand (2,000) dollars, executed to the City of Duluth, with sufficient sureties, conditioned that in conducting said business he will in all things observe the conditions and provisions of this ordinance.

Sec. 4. Upon the approval of said application and bond as aforesaid, said applicant shall pay to the City Treasurer the sum of two hundred and fifty (250) dollars, and shall thereupon receive from the City Clerk a license issued in the name of the said city, authorizing said person to engage in the business of pawnbroking at the place mentioned in said license, for a term of one year, to expire on the first day of May succeeding the date of the issuance of said license.

Sec. 5. The City Clerk shall keep a register of all licenses granted under this ordinance, in which he shall record the name of the person licensed, the time of issuing the same, and the place of business of such person.

Sec. 6. Every person so licensed as aforesaid shall keep at his place of business a book or register in which he shall enter in writing a description of all personal property or choses in action received by him in pledge, the time when they were so received, and any prominent or descriptive mark by which said article may be identified, together with the name and residence of the person or persons by whom the same are pledged.

Sec. 7. Every person licensed according to the provisions of this ordinance shall during the ordinary hours of business when requested, submit said book to any police officer of the City of Duluth who may be in search of any article lost, stolen or embezzled, and shall exhibit to any officer any personal property or choses in action deposited or pledged with him. Every licensed person failing to comply with the provisions of this section shall upon conviction thereof, be fined in a sum not exceeding one hundred (100) dollars or by imprisonment not exceeding sixty days.

All the provisions of this ordinance shall apply to any person keeping a second hand store or junk shop in said city, except that the amount of license required of such person shall be one hundred (100) dollars per year and the amount of the bond required of such persons shall be one thousand (1,000) dollars.

ceedings at the trial and on motion the Court allowed, settled, signed and filed it. On it and the files and record he moved to set aside the conviction on the ground that it was not justified by the evidence and was contrary to law. This motion was refused and he appeals.

*Austin N. McGindley*, for appellant, cited *City Council of Charleston* v. *Goldsmith*, 12 Rich. Law, 470; *Eastman* v. *City of Chicago*, 79 Ill. 178.

*H. F. Greene* and *A. H. Crassweller*, for respondent, cited *City of Duluth* v. *Krupp*, 46 Minn. 435; *City of St. Paul* v. *Colter*, 12 Minn. 41.

MITCHELL, J. The defendant was convicted, under an ordinance of the city of Duluth, of "carrying on and conducting the business of dealer in secondhand goods without first having obtained a license so to do."

The only question which we find it necessary to consider is whether defendant's business came within the provisions of the ordinance.

It appears that he kept a store in which he dealt in new and secondhand furniture, exclusively. We think the evidence sufficient to justify the conclusion that his dealing in secondhand furniture was not merely occasional and incidental, but a regular and principal part of his business; so that it may be assumed, for the purposes of this case, that the business of defendant came within the provisions of the ordinance, providing they apply to all dealers in any kind of secondhand goods.

The city charter, Sp. Laws 1887, ch. 2, subch. 8, § 5, *First*, p. 90, gives the common council authority "to license and regulate all auctioneers, pawnbrokers, dealers in secondhand goods, junk dealers," etc., and provides that the power to regulate thus given shall include the power to define who shall be considered as auctioneers, pawnbrokers, dealers in secondhand goods, and junk dealers. The first section of the ordinance provides that no person shall carry on or conduct the business or calling of pawnbroker or dealer in secondhand goods without first having obtained a license so to do, but does not attempt to define who shall be considered pawnbrokers or dealers in secondhand goods. The re-

maining sections of the ordinance, except the last clause of the seventh, treat exclusively of pawnbrokers, defining who shall be deemed such, providing for their procuring license, giving bonds with sureties, for the registry of all such licenses by the city clerk, requiring the licensee to keep a register of all property received by him in pledge, and of the names and residences of the persons from whom received; also that this register, as well as the property itself, shall be subject to inspection by any police officer in the city in search of any lost or stolen property. The last clause of section seven then provides that "all the provisions of this ordinance shall apply to any person keeping a secondhand store or junk shop."

It will be observed that the first section of the ordinance refers to two classes of persons, viz. "pawnbrokers" and "dealers in secondhand goods." The city council then proceeds, in the exercise of the power specifically granted by the city charter, to define who shall be considered pawnbrokers, and nothing is said about dealers in secondhand goods until we come to the last clause of section seven. That this clause was intended, not merely to extend the provisions of the ordinance to dealers in secondhand goods, but also to define who shall be considered such dealers, within the meaning of the ordinance, is apparent from its terms. In the first place, it is not the mere dealing in the articles, but the keeping a store or shop (terms not used in the first section) for that purpose, to which the ordinance is made to apply. Again, the word "junk" is one neither used nor referred to in the first section, so that it seems to us that in using the phrases "a secondhand store or junk shop" the city council must have used the latter as definitive of the former, thereby intending to limit the ordinance to that class of secondhand stores known as "junk shops." Every junk shop is a secondhand store, but not every secondhand store is a junk shop. The term "secondhand store," if not qualified or limited, would include any store in which any kind of secondhand goods are dealt in, as, for example, secondhand furniture or secondhand books, but stores in which these articles are dealt in would not necessarily be junk shops. The word "junk," which is of nautical origin, originally meant old or condemned cable and cordage cut into small pieces, which, when untwisted, were used for various

purposes on the ship. Hence the word afterwards came to mean wornout or discarded material in general, that still may be turned to some use, especially old rope, chain, iron, copper, parts of machinery, bottles, etc., gathered or bought up by persons called "junk dealers." A junk shop—a place where junk is bought and sold—has been defined as a place where odds and ends are purchased and sold; a store where old metals, ropes, rags, etc., are bought and sold. 12 Amer. & Eng. Enc. Law, 243; *City Council of Charleston* v. *Goldsmith*, 12 Rich. Law, 470.

It is our opinion that it must be held that the city council intended the provisions of the ordinance to be limited to secondhand stores of the class commonly known as "junk shops." This is the class of secondhand stores over which police regulations are peculiarly needed, for the reasons that they and pawnbrokers' shops are the places where thieves most usually attempt to dispose of stolen property, and whose keepers not unfrequently become fences for such goods,—reasons which do not apply with anything like the same force to secondhand stores of other kinds, as, for example, secondhand furniture or secondhand book stores. It is also an argument in favor of our construction of the ordinance that its provisions regulating the manner of conducting the business are entirely appropriate in the case of pawnbrokers' shops and junk shops, at which they seem to be specially aimed, but hardly appropriate in the case of many other kinds of secondhand stores. Moreover, this ordinance, being in partial restriction of trade and penal in its nature, ought to receive a somewhat strict construction, and no cases brought within its operation by doubtful inference. As it is very clear that the place kept by defendant was not a secondhand store or shop of the class known as "junk shops," it follows that, under the construction we have placed upon the ordinance, his business did not fall within its provisions.

Order reversed.

(Opinion published 56 N. W. Rep. 580.)