COMMONWEALTH vs. MEYER RINGOLD.

Essex.    November 5, 1902. — November 25, 1902.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Junk Dealer.*

One who has no shop, but buys, to sell again, from a certain number of carriage manufacturers the odds and ends óf new iron left from larger pieces used in the manufacture of carriages and not available for that use, is not a junk dealer.

COMPLAINT for a violation of §§ 1 and 10 of Article VII. of the by-laws of the town of Amesbury adopted under the provisions of Pub. Sts. c. 102, § 29.

Article VII. § 1 of the by-laws of the town of Amesbury provides as follows: The Board of Selectmen may annually "license persons to be dealers in and keepers of shops for the purchase, sale or barter of junk, old metals or second-hand articles in said Amesbury, subject to the provisions of Chapter 102 of the Public Statutes of this Commonwealth and acts amendatory of and additional thereto and may revoke at pleasure."

Section 10 of the same article provides as follows: " Whoever not being so licensed, keeps such shop, or is such dealer in said Amesbury . . . shall forfeit twenty dollars for each offence. . . ." The defendant had no license of any kind from the selectmen of Amesbury.

In the Superior Court *Sherman*, J. refused to order a verdict of not guilty. The case is stated in the opinion.

*A. W. Reddy, Jr.*, for the defendant.

*W. S. Peters*, District Attorney, for the Commonwealth.

MORTON, J. This is a complaint charging the defendant with being a dealer in and purchaser of junk in the town of Amesbury without having any license therefor in said town, and contrary to the statutes, and to the by-laws of said town. The jury returned a verdict of guilty, and the case is here on exceptions by the defendant to the refusal of the judge to direct a verdict of not guilty.

There does not seem to have been any dispute as to the facts. The defendant lives in Newburyport. It appeared that he came

to Amesbury from time to time and bought from a certain number of carriage manufacturers who were customers of his, the odds and ends of new iron which were left from larger pieces that had been used in the manufacture of carriages, and which were not available for further use in that line. He bought it to sell again; but he did not buy every kind of iron, nor hold himself out to buy of any one who had iron to sell. He bought only from carriage manufacturers, and from them he bought only such iron as they usually have left over in the process of carriage manufacturing. It does not appear and there is no contention that he had any shop in Amesbury; but we assume that he sold the iron in Amesbury as he had opportunity.

We think that the ruling requested should have been given. A junk shop has been defined as a place where old metals, ropes, rags, etc., are bought and sold, (*Duluth* v. *Bloom*, 55 Minn. 97; *City Council of Charleston* v. *Goldsmith*, 12 Rich. L. (S. C.) 470; 17 Am. & Eng. Encyc. of Law, (2d ed.) 1038,) and a junk dealer would be one who deals in such articles. We do not think that one who buys to sell again from a certain number of carriage manufacturers, who are customers of his, the odds and ends of new iron which have been left from larger pieces used in the manufacture of carriages, and which are not available for further use in that line, can be fairly called a junk dealer. The reasons for requiring junk dealers to take out licenses do not apply to such a business, and we do not think that it comes within the statutes relating to junk dealers.

*Exceptions sustained.*