## City of Chicago v. L. Reinschreiber.
### Gen. No. 11,776.

1. MUNICIPAL CORPORATION—*source of powers of.*  A municipal
corporation possesses such powers as are conferred by statute.

2. ORDINANCE—*reasonableness not test of validity of.*  The mere
fact that an ordinance is reasonable does not determine its validity;
there must appear authority for its enactment.

3. "JUNK STORE"—*what is not, within meaning of statute author-
izing licensing of.*  A store where bottles, new and old, are exclu-
sively dealt in, is not a junk store within the meaning of such stat-
ute, merely because bottles which have been used, but are as good
as ever, in no way distinguishable as bottles, so far as appears, from
such as are new, are bought and sold there in the ordinary course
of business, together with bottles which are absolutely new.

4. "SECOND-HAND STORE"—*what not, within meaning of statute
authorizing licensing of.*  A store such as is defined in the preceding
paragraph of syllabus is not a second-hand store within the mean-
ing of such statute.

5. COSTS—*judgment against municipal corporation for, improper.*
It is error to enter a judgment for costs against a municipal cor-
poration.

Action commenced before justice of the peace.  Appeal from the
Criminal Court of Cook County; the Hon. RICHARD S. TUTHILL,
Judge, presiding.  Heard in the Branch Appellate Court at the March
term, 1904.  Reversed and remanded.  Opinion filed June 2, 1905.

**Statement by the Court.**  This action was commenced
before a justice of the peace, where judgment was rendered
fining appellee $10 and costs for doing business without a
license in alleged violation of section 1783 of the ordinances

of the city of Chicago. Upon appeal to the Criminal Court —a jury having been waived—appellee was found not guilty. The city brings the cause here upon appeal.

The case was submitted upon an agreed statement of facts, as follows:

"L. Reinschreiber, the defendant herein, was on the 20th day of April, A. D. 1903, prior to the commencement of this action, engaged, at No. 2333 State street, in the city of Chicago, county of Cook and State of Illinois, in the business of dealing exclusively in new and second-hand bottles; that his business consisted in the purchase and sale of new and second-hand bottles in about equal amounts; that the defendant, through his agents and employes, bought from any person desiring to sell to him old bottles, and through his agents and employes gathered up in the streets and alleys of the city of Chicago second-hand and old bottles, and that the entire amount of old bottles handled in the defendant's business did not exceed one-half of the business done by defendant; the other one-half consisted in dealing in new bottles. That the defendant bought and sold old bottles without reference to the prior use to which said bottles had been put or devoted, and that the defendant held himself out to the public as a bottle dealer dealing in new and second-hand bottles; that is, in the purchase and sale of new and second-hand bottles; that some of the purchases of new and old bottles by defendant were made in carload lots, and that the business of the defendant in buying and selling new and second-hand bottles was conducted in the city of Chicago; that the fee for a license as a second-hand dealer is fixed by the ordinances of said city at $50 per annum, and that the defendant had no license of any kind whatsoever from the city of Chicago for the conduct of his business; that the following ordinance of the city of Chicago (entitled second-hand dealers) was duly passed and published and was on the 20th day of April, A. D. 1903, in full force and effect:

" 'Section I, paragraph 1783, Article I, Chapter 59 of the Revised Code of the City of Chicago, passed April 8, 1897,

be and the same is hereby amended so that said paragraph shall read as follows:

"'1783. *Dealing without license prohibited.* No person shall keep a place for the purchase or sale of second-hand clothing, second-hand household goods, bottles or other articles, nor shall any person trade, barter, deal in or carry on the business of dealing in second-hand bottles, second-hand household goods, or other articles without being specially licensed for such purpose, and any license issued under the provisions of this ordinance shall designate the house or place in which the person so licensed shall carry on the business for which he is licensed, and such business shall not be carried on or conducted in any other place than that designated in and by said license. No person licensed under the provisions of this section shall be permitted to solicit business in any of the articles named herein upon any street or public highway in the city of Chicago without being specially licensed for said purpose. Any person violating the provisions of this paragraph shall upon conviction thereof be fined not less than $50 nor more than $200 for each offense. This ordinance shall take effect and be in force from and after its passage and due publication.'

"All of which above facts were agreed upon in open court by the parties hereto as facts proven and admitted in the above entitled cause by competent evidence."

HOWARD S. TAYLOR and GEORGE H. KRIETE, for appellant.

ELIJAH N. ZOLINE, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Appellant contends that the ordinance in controversy is valid and reasonable, that it is applicable to appellee's business, and that the proof showed the latter guilty of its violation.

It is conceded that appellee is engaged in buying and selling new and second-hand bottles in about equal quantities,

that he buys from any one who desires to sell old bottles to him, that by his agents and employes he gathers second-hand and old bottles in the streets and alleys of Chicago, that he buys and sells them without reference to their prior use, and buys both new and second-hand bottles sometimes in carload lots.   The ordinance specifically forbids any one "to deal in or carry on the business of dealing in second-hand bottles," or to "keep a place for the purchase or sale of second-hand * * * bottles" without being specially licensed, a violation of the ordinance subjecting the offender upon conviction to a fine not less than $50 nor more than $200.

Article 5 of the Act providing for the incorporation of Cities and Villages (R. S., Chap. 24) confers authority upon the city council in cities and upon the president and board of trustees in villages (paragraph 4) to fix the amount, terms and manner of issuing and revoking licenses; (par. 66) "to regulate the police of the city or village, and pass and enforce all necessary police ordinances;" (par. 78) "to do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease;" (par. 95) "to tax, license and regulate second-hand and junk stores and to forbid their purchasing or receiving from minors without the written consent of their parents," etc., and (par. 96) "to pass all ordinances, rules and make all regulations proper or necessary to carry into effect the powers" so granted.   These are the provisions relied upon by the city as authorizing the ordinance in controversy.

A municipal corporation possesses such powers as are conferred by the statute.   Unless authority can there be found for the ordinance under consideration it must be deemed invalid.   Stanton v. City of Chicago, 154 Ill., 23-27.   There is nothing in the evidence tending to show that so far as second-hand bottles are concerned the ordinance can be justified as a necessary police ordinance or as necessary for promotion of health or suppression of disease.   The power must be found if at all in the provision authorizing the city council to "tax, license and regulate second-hand and junk stores." While it is true, as said in Harmon v. City of Chicago, 140

Ill., 374-396, that the presumption is always in favor of the validity of an ordinance passed in pursuance of competent statutory authority, such authority is not itself a matter of presumption, and it is immaterial how reasonable an ordinance may be if the authority for its enactment has not been conferred.

The question is then whether the business of appellee is such as to bring it and the place where it is conducted within the definition of "second-hand and junk stores." A junk store is a place where "junk" is dealt in. Junk is defined as "worn out and discarded material in general that may be turned to some use; especially old rope, chain, iron, copper, parts of machinery, and bottles gathered or bought up by tradesmen called junk dealers; hence, rubbish of any kind; odds and ends" (Century Dictionary). The evidence shows that appellee's business cannot be properly described as that of a junk dealer. He buys old bottles, to be sure, as well as new, but he deals in nothing else. He is not a buyer or seller of old and worn out or miscellaneous materials. Old bottles, as fit for use as when new, may be found in junk shops, but are not by themselves properly definable as "junk," nor can persons who deal in them exclusively properly be called "junk dealers." Bottles do not generally wear out and are capable of use unless broken, in precisely the same manner as new bottles. They are less properly described as "junk" than old iron or copper or brass, which are sold to foundries to be re-melted. Yet a foundry buying up old iron for such purpose could scarcely be deemed a junk shop. In Carberry v. United States, 116 Fed. Rep., 773-774, it was held that "old bottles capable of being used as bottles are not junk and are properly assessable as bottles." In City of Duluth v. Bloom, 55 Minn., 97-100, it is said that "Every junk shop is a second-hand store, but not every second-hand store is a junk shop. * * * The word 'junk,' which is of nautical origin, originally meant old or condemned cable and cordage cut into small pieces, which when untwisted were used for various purposes on the ship. Hence the word afterward came to mean worn out or discarded material in general, that

still may be turned to some use, especially old rope, chain, iron, copper, parts of machinery, bottles, etc., gathered or bought up by persons called 'junk dealers.' " Although old bottles are not necessarily "junk," yet, if they were, one who buys and sells them only would not necessarily be a "junk dealer." Nor is appellee's business and the place where it is conducted properly described as a "second-hand store." In Eastman v. City of Chicago, 79 Ill., 178-180, it was held that booksellers dealing in such stock as is usually kept in a retail book store, buying and selling second-hand books in connection with their other business would be unjustly characterized as "dealers in second-hand goods," and are not liable to penalties imposed against such dealers who have not first obtained a license from the city. In like manner bottles which are as sound and unworn as the day they were made do not come under the meaning unusually attached to "second-hand" goods, by which term is ordinarily meant not only things that are old or have been used, but such as are more or less the worse for wear and use, like cast-off clothing or old and discarded furniture. In City of Duluth v. Bloom, *supra,* it is said that the term "second-hand store," if not qualified or limited, would include any store in which any kind of second-hand goods are dealt in, such as second-hand furniture or second-hand books. In the statute under consideration (R. S., par. 95, art. V, chap. 24) the power to "tax, license and regulate" includes by the words used "second-hand and junk stores," and authority is granted to forbid such stores purchasing or receiving from minors without consent of their parents or guardians. The second-hand and the junk store are thus classed together in a manner indicating that the legislature had in mind second-hand stores in the nature of or doing a business similar to that carried on by junk stores where inducements are liable to be held out to minors to steal material in order to sell it at such stores. In the case last referred to the Minnesota Court held that a dealer in new and second-hand furniture was exempt from penalty under an ordinance requiring a "pawnbroker or dealer in second-hand goods" to obtain a license,

the ordinance applying "to any person keeping a second-hand store or junk shop." It was held that the provisions of the ordinance were intended "to be limited to second-hand stores of the class commonly known as junk shops." We are of opinion that a store where bottles new and old are exclusively dealt in is not a second-hand store within the meaning of the statute merely because bottles which have been used but are as good as ever, in no way distinguishable as bottles so far as appears from such as are new, are bought and sold there in the ordinary course of business, together with bottles which are absolutely new. In the most literal sense it would be a misuse of terms to call a place of business a second-hand store, where the dealing in second-hand material is merely an incident of the business, not an essential part of it, nor its principal purpose. It follows from what we have said that the city council had no power to enact an ordinance requiring one keeping a place exclusively for the purchase and sale of new and second-hand bottles and dealing in them to be specially licensed.

Appellee introduced in evidence certain ordinances of the city imposing restrictions upon one who is a "dealer in second-hand articles or keeper of a junk shop." These ordinances, however appropriate for the kinds of business to which they are properly applicable, would be intolerable if applied to a business such as appellee's. Objection is made by appellant that this evidence was incompetent. We think it was admissible as tending to show that classing appellee's business with that of the ordinary "dealer in second-hand articles or keeper of a junk shop" would be unreasonable and not within the intention of the statute authorizing the city council to "tax, license and regulate second-hand and junk stores."

It is assigned as error that the trial court entered judgment against the city for costs. The statute requires that in *quasi*-criminal cases appealed to the Criminal Court from a justice of the peace, the party so appealing shall pay ten dollars for the use of or to the clerk of the Criminal Court, who is required in case the appeal is decided in favor of such

appellant to return the ten dollars to the latter.   R. S. chap. 53, sec. 32.   A judgment for costs cannot be entered against a municipal corporation when the defendant in any such prosecution is acquitted.   Anderson v. Schubert, 158 Ill., 75-77.   For the error in this respect the judgment of the Criminal Court must be reversed and the cause remanded, with directions, however, to that court to dismiss the suit.

*Reversed and remanded with directions.*