### CITY OF NEW YORK v. VANDEWATER.

(Supreme Court, Appellate Division, Second Department. June 8, 1906.)

1. LICENSES—POWER TO IMPOSE—JUNK DEALERS.
     The requirement of a license from a junk dealer is a legitimate exercise of the police power.
     [Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Licenses, §§ 7, 38.]

2. SAME—OCCUPATIONS—JUNK DEALER—WHAT CONSTITUTES.
>One who dealt in scrap iron and steel in large quantities, and handled no single pieces of iron, was not a junk dealer within an ordinance requiring such dealer to be licensed.

Appeal from Municipal Court of New York.

Action by the city of New York against William W. Vandewater. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

James D. Bell (Herman Stiefel, on the brief), for appellant.
Walter H. Dodd, for respondent.

JENKS, J. This action is for a violation of sections 1, 2, and 22 of an ordinance of the city of New York relating to businesses requiring a license. The complaint was dismissed on trial, and the city appeals.

The said section 1 reads:

>"The following businesses must be duly licensed as herein provided, namely, public cartmen, truckmen, hackmen, cabmen, expressmen, drivers, junk dealers, dealers in second-hand articles, hawkers, peddlers, venders, ticket speculators, coal scalpers, common shows, shooting galleries, bowling alleys, billiard tables, dirt carts, exterior hoists and stands within stoop-lines, and under the stairs of the elevated railroad stations."

Section 2 prohibits any one of such businesses without a license, under prescribed penalties. Section 22 provides:

>"Any one dealing in the purchase and sale of junk, old rope, old iron, brass, copper, tin or lead, rags, slush or empty bottles shall be deemed to be a junk dealer and the place of business a junk shop."

—and requires a bond in the penal sum of $250 for the due observance of all municipal ordinances. The requirement of a license from a junk dealer is a legitimate exercise of the police power (Grand Rapids v. Braudy, 105 Mich. 670, 64 N. W. 29, 32 L. R. A. 116, 55 Am. St. Rep. 472; Marmet v. State, 45 Ohio St. 63, 12 N. E. 463), and the regulation of his business is justified by a regard for public convenience and protection. Cooley's Const. Lim. (7th Ed.) p. 888. The likelihood that junk may have been pilfered or stolen is the reason for the restriction, location, and regulation of dealers therein. City of Duluth v. Bloom, 55 Minn. 97, 56 N. W. 580, 21 L. R. A. 689; Grand Rapids v. Braudy, supra; Marmet v. State, supra. And it is for this reason that other sections require a junk dealer to record in a book a description of every article purchased, the name and residence of the seller, and the day and hour of the purchase, which book is open to inspection by the police authorities; prohibit the trade at any place save as designated in the license, forbid purchases from minors or apprentices, or from any person between sunset and 7 o'clock in the morning; and require the dealer to inform the authorities if he have any article in his possession corresponding to one which is advertised as lost or stolen, and to exhibit to the authorities any article in his possession supposed to be lost or stolen.

If the mere fact that one purchases and sells material which may be generically described as "old iron" brings him within the purview of

the ordinance, then the defendant was liable. But whether or not he is within the ordinance should rather be determined by the general character and scope of his business. Commonwealth v. Farnum, 114 Mass. 267; Eastman v. Chicago, 79 Ill. 178; Commonwealth v. Ringold, 182 Mass. 308, 65 N. E. 374. The respondent deals in scrap iron and steel and purchases articles like boiler tubes, axles, car wheels, switches, tracks, crossings, steel frames of buildings, sections of elevated railroad fabrics and of bridges, all of great bulk and weight, which he ships to mills and furnaces. He does not buy or sell single pieces of iron, and the smallest purchases shown were one of two barrels of horse shoes and one of four tons of such articles. I think that such a traffic is not that of a junk dealer. "Junk," originally a nautical term, meant old rope or cordage, and it has been extended to mean cast-off odds and ends, like scrap iron, old bottles, metals, glass, and the like. Commonwealth v. Ringold, supra; Words and Phrases Judically Defined. It is quite clear that section 22, after the use of the general term "junk," does but define it by the further terms, "old rope, old iron, brass," etc. The fact that a thing is composed of old iron or old steel does not make it junk. It is the size and character of the article rather than its composition that must determine whether it is within that term. It may not be easy to define the term, because it covers nondescript articles, but it is not difficult to determine whether an article is within it. It seems to me clear that the general character and scope of the business of the defendant does not fall within the description of a dealer in junk. There is a radical difference between the buyer of great masses of metal weighing tons at a time, parts of railroad equipment, sections of elevated railroad structures or bridges, and the like, and one who may buy old bottles, scraps, or pieces of metal, slush, old rope, and the like, which might readily be pilfered or stolen and carried away to be secretly sold by the culprit. It is the business of this character that is to be licensed, located, regulated, and made subject to the scrutiny of the police authorities. The business of the respondent is not necessarily within the terms of the ordinance, while the reasons for the enactment of it and the further sections of regulation do not exist.

Therefore the judgment should be affirmed, with costs. Commonwealth v. Ringold, supra. All concur.