THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* AMERICAN WOOL STOCK CORP. and B. D. KAPLAN & Co., INC., Appellants.

Court of Special Sessions of City of New York, Appellate Part, First Department, July 31, 1940.

*Joseph V. McKee,* for the appellants.

*William C. Chanler, Corporation Counsel [Fred Iscol* of counsel], for the respondent.

PER CURIAM. The complaint against the defendant Kaplan & Co., Inc., charged that on November 22, 1939, said defendant "did unlawfully engage in the business of Junk Shop at # 7 Vestry Street, Borough of Manhattan, City and County of New York, without a license therefor in violation of Chapter 32-B, Article 18, of the Administrative Code of the City of New York." The complaint against defendant American Wool Stock Corp. is in the same form except that its place of business is specified as No. 10 Grand street in the city and county of New York.

The particular provisions with which we are here concerned are:

Article 18, section B32–114.0, of the Administrative Code provides as follows:

"a. It shall be unlawful for any person to act as a junk dealer without a license therefor.

"b. The annual fee for such license shall be twenty dollars and for each cart or boat operated by such dealer an additional five dollars, except that if such cart is a push-cart the fee therefor shall be two dollars.

"c. Each such license shall expire on the thirty-first day of October next succeeding the date of issuance thereof."

Section B32–113.0 reads: "'Junk Dealer.' Any person engaged in the business of purchasing or selling junk, old rope, old iron, brass, copper, tin, lead, rubber, paper, rags, bagging, slush or empty bottles."

The two inspectors called as witnesses for the People testified to visits to the places of business of both defendants where they saw what they termed large bales of old "rags" and were told by the presidents of the respective defendant companies that the business consisted of the purchase and sale of new and old woolen "rags." An advertisement of defendants was produced in which the word "rags" was used. In addition four dealers and a truckman were called as witnesses by the People. The witness Ferrara testified that his concern, the Melrose Salvage Corp., is in the paper and rag business and buys from junkmen in 50 or 100 or 200-pound lots and from junk shops in truckload lots; that his company has done business with defendants for about ten years and sells to them woolen rags in lots of not less than 1,000 pounds each; that his company sorts the material as to mixed wool and where a wool suit is bought it rips out the cloth lining.

Joseph Marina described the business of his company, the Brooklyn Paper Stock Corporation, as paper stock and rags; he testified that he buys old rags from junk dealers and junk shops and has done business with defendant American Wool Stock Corp. for fifteen years and with defendant Kaplan & Co. for ten years; that

he sells to defendant Kaplan & Co. old wool rags in quantities from 1,000 pounds up; that junk dealers or junkmen are those who pick up from the houses, and junk shops are shops that collect from junk dealers or junkmen; that he grades the merchandise and gets wool rags which he sells to woolen dealers.

James Derrico described his business as waste material, paper and rags, old rags and paper stock; he testified that his company, Derrico & Co., Inc., has done business with defendant American Wool Stock Corp. for ten or fifteen years; that he sells to this corporation old silk stockings; that he buys these from junk dealers who in turn buy from junk peddlers; that he sells in car and truckload lots and delivers to the piers for export by defendant American Wool Stock Corp.

George Garone testified that his firm is in the paper stock business, handling also rayon, cotton, silk and woolen rags; that for two years he has done business with defendant Kaplan & Co. and for fifteen years with defendant American Wool Stock Corp.; that he sells these defendants old graded woolen rags in machine compressed bales which weigh from 1,000 to 1,250 pounds each; that he gets his material from the junk shops which in turn buy from junk peddlers; that he sorts and strips the woolen cloth.

Disregarding immaterial variations, it is clear from the testimony of the foregoing four witnesses that they sell to defendants so-called woolen rags in substantial quantity lots from 1,000 pounds up; that the original source is through peddlers or junkmen who visit houses, apartments, etc., and who in turn sell to larger collectors operating junk shops; that said witnesses purchase from junk shops and junkmen who are licensed to operate as such. The testimony of the People's remaining witness, Silverman, the expressman, merely relates to deliveries by him from dealers to defendants of so-called old woolen rags and clippings, which are the leavings of cutting machines.

Witnesses in behalf of defendants testified that for the past sixty-five years defendant Kaplan & Co. has been engaged in the business of purchasing, grading, sorting and trimming woolen " clips " and used woolen materials which it reprocesses and sells to woolen mills; that in the cutting of men's suits and overcoats and women's garments or wool sweaters there are necessarily unused pieces or clippings known as " clips;" that substantial quantities of these " clips " are purchased from clothing manufacturers; that the used woolen materials are purchased from wholesale graders who in turn purchase from licensed junk dealers; that the junk dealers pick up the materials from housewives, superintendents and other original sources; that about twenty per cent of defendant Kaplan & Co.'s

total purchases are made in New York city and about fifty per cent are in carload lots purchased for the most part without the city of New York; that purchases within the city range from a bale of 1,000 pounds to as much as 18,000 or 20,000 pounds; that sales by defendant Kaplan & Co. are in carload lots or 1,000 pound lots; that the reprocessing done by said defendant consists in part of blending the materials to approximate a desired shade or color so as to facilitate the dyeing at the woolen mills and that the sales by defendant are exclusively to woolen mills.

Defense witnesses further testified that defendant American Wool Stock Corp. has been in the same line of business as the other defendant for the past twenty-five years; that it handles about seventy-five per cent old woolen material and about twenty-five per cent new and that the method of operation and reprocessing of materials by both defendants is substantially the same.

The question fairly raised by the record is as to whether or not the defendants who make no purchases of new or used material from junkmen, junk peddlers or junk shops, but only from wholesale dealers, and who grade and sort the new and used wool material as to color and wool content in compliance with the specifications of the woolen mills, and who in turn sell such material to the woolen mills in bulk lots of not less than 1,000 pounds each, are engaged " in the business of junk shop," as charged in the complaint, in violation of section B32–114.0 of article 18 of the Administrative Code of the City of New York.

The magistrate in finding defendants guilty relied upon the decision in the case of *People* v. *Star Metal Smelting & Refining Co.* (274 N. Y. 617), which affirmed without opinion a judgment of this court likewise rendered without opinion. From an examination of the two records we think there is a distinction between the *Star Metal* case and the instant case in that, in the former, purchases were made from junk dealers and retail junk collectors, while in the latter the purchases were made only from wholesale clothing manufacturers and other wholesalers. In other words, defendants did not make purchases from junk dealers or collectors. We do not consider the size of the business as determining whether a person or concern is a junk dealer, but rather the character of the business and the manner in which it is conducted. The record and briefs contain many references to " rags," " clips," and " wool stock," but considering the business as actually conducted by defendants there appears to be no basis for adjudging them junk dealers, as defined in and intended to be covered by the statute. The defendants sell to the woolen mills. Surely no one would consider the mills or manufacturers as junk dealers because they

purchase materials which come indirectly in large quantities from the latter.

The present statute is in substantially the same form as in 1906 at which time it was construed by the Appellate Division, Second Department, in *City of New York* v. *Vandewater* (113 App. Div. 456). In the *Vandewater* case the court stressed the general character and scope of the business of the defendant as determining whether it fell within the description of a dealer in junk. Applying that test in the instant case, we are of the opinion that defendants did not violate the statute in question. Accordingly, the judgment should be reversed and the complaint dismissed.

All concur. Present — BAYES, P. J., HOFFMAN and SALOMON, JJ.