## STATE v. RICHARD ANTHONY WYBIERALA.

235 N. W. 2d 197.

October 10, 1975—No. 45020.

*John E. Daubney* and *Thomas J. Burke,* for appellant.

*Warren Spannaus,* Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Sheran, C. J., and Rogosheske, Yetka, and Chanak, JJ., and considered and decided by the court en banc.

SHERAN, CHIEF JUSTICE.

Appeal from a judgment of conviction for theft in violation of Minn. St. 609.52, subd. 2. We affirm.

Defendant operates two businesses at Clark and Whitall Streets in St. Paul. One, called Metro Refuse, Inc., is licensed to engage in refuse collection at 400 Whitall; the other, Poor Richard's Inc., is licensed to run what is termed a "junk" business or "secondhand" business at 820 Clark. There is a common entranceway at 400 Whitall. Although the businesses are owned by separate corporations, the physical layout and common dependence on defendant's operational control lead us to treat the places as one in considering the problems raised by this appeal.

Stolen outboard motors were discovered during a search of the premises in June 1973. Defendant was tried for theft and convicted of violating § 609.52, subd. 2. This trial commenced October 10, 1973. No appeal was taken. Between the discovery of the stolen goods in June 1973 and the commencement of the October trial, other stolen goods were discovered on the premises. It was for the theft of these goods that defendant was tried and convicted in the present proceedings, the trial commencing January 7, 1974.

On appeal, it is argued that the conviction should be reversed because (a) the theft for which defendant was tried in January

1974 was a part of the same behavioral incident which brought about the criminal proceedings tried in October and was therefore barred by Minn. St. 609.035, forbidding serialized prosecutions; and (b) the stolen goods received in evidence were the fruits of an illegal search and seizure made in violation of defendant's constitutional rights, state and Federal.

■ The applicable elements of Minn. St. 609.52, subd. 2, are as follows: (1) The intentional possession of movable property by the defendant without claim of right; (2) ownership of the movable property by another person; and (3) intent by defendant to deprive the owner permanently of possession of the property.

In assessing defendant's first claim, we make these assumptions with respect to the property for the possession of which defendant was convicted in the January 1974 proceedings:

(1) It was in the possession of defendant when the stolen property constituting the basis of the October prosecution was discovered by the law enforcement officials;

(2) The law enforcement officials knew that it was stolen before the October trial commenced;

(3) The stolen property constituting the basis for the prosecution tried in October was owned by persons different from those who owned the property forming the basis for the January prosecution;

(4) The property forming the basis for the October prosecution was stolen at different times and from different places than the property forming the basis of the January proceedings;

(5) The property in defendant's possession which formed the basis for the October prosecution was obtained from the same thieves as was the property forming the basis for the January proceedings, but at different times.

Assuming these facts, for which there is adequate support in the record, the question is whether defendant's possession of stolen property at a given point in time is a single behavioral incident regardless of the fact that the different items of prop-

erty making up the total in defendant's possession were taken from different owners at different times and from different places, and were obtained on different occasions by the defendant from the persons who stole them.

We have no Minnesota decision dealing with the problem, but we are satisfied that under our prior decisions the "behavioral incident" in this type of case consists of either (1) the knowing acceptance of stolen movables at one time and place from the same thief or thieves without regard to distinctions of ownership or time and place of theft; or (2) the unauthorized retention of possession of property having a common ownership, regardless of differences in the time and place of the theft or in the identity of the thieves.[1] The result in this case is the same whether we apply one test or the other. The thefts which yielded the stolen goods were separate and distinct. The owners of the goods stolen were not the same. We conclude that under Minn. St. 609.035 the prior conviction does not constitute a bar to the conviction being reviewed.

■ For the purposes of this opinion, we will assume that the stolen goods received in evidence in the January 1974 trial were the fruits of a search and seizure to which the defendant did not unqualifiedly consent and which, initially at least, was not made pursuant to a valid warrant.

In our judgment, the search and seizure were justified under the terms of the ordinance of the city of St. Paul to which defend-

---

[1] See, State v. Johnson, 273 Minn. 394, 141 N. W. 2d 517 (1966); State v. Gladden, 274 Minn. 533, 144 N. W. 2d 779 (1966); State v. Reiland, 274 Minn. 121, 142 N. W. 2d 635 (1966); State v. Harris, 277 Minn. 351, 152 N. W. 2d 728 (1967); State v. Murphy, 277 Minn. 355, 152 N. W. 2d 507 (1967); State ex rel. Stangvik v. Tahash, 281 Minn. 353, 161 N. W. 2d 667 (1968); State v. Fleck, 281 Minn. 247, 161 N. W. 2d 309 (1968); State v. Shevchuck, 282 Minn. 182, 163 N. W. 2d 772 (1968); State v. Boucher, 286 Minn. 475, 176 N. W. 2d 624 (1970); State v. Kooiman, 289 Minn. 439, 185 N. W. 2d 534 (1971); State v. Carlson, 291 Minn. 368, 192 N. W. 2d 421 (1971); State v. Finn, 295 Minn. 520, 203 N. W. 2d 114 (1972); State v. Wheat, 296 Minn. 97, 206 N. W. 2d 655 (1973).

ant became subject as a licensed junk and secondhand dealer. St. Paul Legislative Code, § 342.04, relating to secondhand dealers, provides:

"Any person, firm or corporation licensed under the provisions of this chapter, shall, at all times during the term of said license, allow the pawnshop inspector, license inspector or officers of the police force of the City of St. Paul to enter the premises where said licensee is carrying on such business, for the purpose of inspecting such premises and inspecting the goods, wares and merchandise therein for the purpose of locating goods suspected or alleged to have been stolen or otherwise improperly disposed of."

St. Paul Legislative Code, § 341.06L, relating to junk dealers, provides:

"Any licensee shall be subject to reasonable inspection at reasonable times by proper city officials as in the case of other licensed businesses."

As long ago as City of Duluth v. Bloom, 55 Minn. 97, 56 N. W. 580 (1893), the Minnesota Supreme Court noted with respect to a business of the kind here involved (55 Minn. 101, 56 N. W. 581):

"* * * This is the class of secondhand stores over which police regulations are peculiarly needed, for the reason that they and pawnbrokers' shops are the places where thieves most usually attempt to dispose of stolen property, and whose keepers not unfrequently become fences for such goods,— * * *."

Wacksman v. Harrell, 180 N. E. 2d 852 (Ohio Ct. App. 1962), considered the impact of legislative provisions of the kind quoted above on claims of illegal searches and seizures made by licensees. Referring to the applicable provision of the Revised Code of Ohio, the court stated (180 N. E. 2d 854):

"The legislature in this section, which pertains with particularity to pawnbrokers, makes it unnecessary for a municipal

police officer to secure a search warrant before he examines goods, articles or things deposited in a pawn shop. The intent of the legislature is clear from the language of the section and, undoubtedly, the rationale is that such a procedure is both justified and necessary in the public interest because of the intrinsic nature of the pawnbroking business. This enactment is a legitimate exercise of the state's police power.

\* \* \* \* \*

" 'The use of a search warrant to prevent and detect crime is a valid exercise of the police power of the state. The constitutional provisions have no application to reasonable rules and regulations adopted in the exercise of the police power for the protection of the public health, morals, and welfare. Therefore, inspection of a place of business during business hours, in the enforcement of reasonable regulations in the exercise of the police power, is not a violation of the guaranty against searches and seizures. And the right is not infringed by a statute or ordinance requiring pawnbrokers to obtain licenses and keep books showing their transactions and to submit such books and the goods received in pawn to official inspection; \* \* \*.' "

The searches of the premises maintained and operated by defendant were made during regular business hours, reasonably and in a way fully consistent with the duties of the police officers and the obligations of the licensee. This being so, the qualified character of defendant's consent to the search and seizure is immaterial.[2]

Affirmed.

---

[2] For a discussion of the limitations upon the consent to search which may be required as a condition of a license, compare People v. Younger, 327 Mich. 410, 42 N. W. 2d 120 (1950), and Boynton v. State (Fla.) 64 So. 2d 536 (1953). See, United States v. Biswell, 406 U. S. 311, 92 S. Ct. 1593, 32 L. ed. 2d 87 (1972); Colonnade Catering Corp. v. United States, 397 U. S. 72, 90 S. Ct. 774, 25 L. ed. 2d 60 (1970); Zap v. United States, 328 U. S. 624, 66 S. Ct. 1277, 90 L. ed. 1477 (1946); United States v. Green, 474 F. 2d 1385 (5 Cir.), certiorari denied, 414 U. S. 829, 94 S. Ct. 55, 38 L. ed. 2d 63 (1973); Manchester Press Club v. State Liquor Comm. 89 N. H. 442,

---

200 A. 407 (1938); People v. Curco Drugs, Inc. 76 Misc. 2d 222, 350 N. Y. S. 2d 74 (1973). But see, See v. City of Seattle, 387 U. S. 541, 87 S. Ct. 1737, 18 L. ed. 2d 943 (1967); United States v. Hart, 359 F. Supp. 835 (D. Del. 1973); 68 Am. Jur. 2d, Searches and Seizures, §§ 15, 19.