*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0963**

State of Minnesota,
Respondent,

vs.

Stephen Charles Iepson,
Appellant.

**Filed April 6, 2015
Reversed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-13-10166

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Joseph P. Tamburino, Hillary B. Parsons, Caplan & Tamburino Law Firm, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant challenges his conviction of fifth-degree controlled-substance crime, arguing that the police violated his Fourth Amendment constitutional rights by conducting a warrantless search of his business premises, and further arguing that the district court erred by denying his motion to suppress the evidence. We reverse.

# FACTS

The present case involves the warrantless search of a commercial building located at 3539 85th Avenue North in Brooklyn Park. The building is a large industrial space housing several individual units, including a unit leased by appellant-tenant Stephen Charles Iepson for his business, Free Vend Technical Services.

On November 27, 2012, there was a gas leak in the main gas line running into the building. CenterPoint Energy (CenterPoint) turned off the gas supply to the entire building in order to repair the gas leak. Following the repair, CenterPoint needed to relight the individual furnace pilot lights in each tenant's space. CenterPoint was able to relight some, but not all, of the furnaces in each unit from the outside of the building. CenterPoint was unable to reach appellant by phone to gain entry to his business unit and contacted the owner of the commercial building and a locksmith to drill open the door to appellant's unit. The building owner also tried to contact appellant to gain access to his business unit but did not receive an answer.

CenterPoint contacted the Brooklyn Park police department to request a standby police presence before drilling the locks at Free Vend Technical Services, appellant's business. CenterPoint routinely asks for a standby police presence in these types of situations. A Brooklyn Park police officer arrived approximately two hours later and met with the building owner, the CenterPoint technician, and the locksmith. The officer knocked on the door to appellant's unit several times but did not receive an answer. The building owner had a key to the front door of Free Vend Technical Service's business unit, and he unlocked it.

2

The front door to appellant's business unit opened into a small office area. The building owner, the police officer, and the technician entered into the office area. Beyond the initial entry area a second, locked door, led from the office area to the back portion of the business where the furnace was located. The building owner did not have a key to the second door and the locksmith drilled the lock and opened the second door to the back portion of appellant's business. The officer testified that as soon as the inner door opened, he smelled an "extremely strong smell of unburnt marijuana."

The officer entered through the second door into a larger warehouse-type space. The officer did not have a search warrant to enter through the second door. The officer described the interior space as a multi-level warehouse area. As the officer walked through the warehouse he saw "what appeared to be a marijuana grow" in the upper level portion of the warehouse and harvested marijuana plants in the lower level of the warehouse. The technician located the furnace, relit the pilot light, and left the building.

The officer left the building without conducting further investigation and contacted his sergeant. The police department obtained and executed a search warrant on appellant's business. Officers found 16-20 harvested marijuana plants in the lower part of the business and multiple marijuana plants encased in foil with hydroponic lights over them in the upper part of the business. Officers also found paperwork in appellant's name, a water pump and filtration system, a scale, and additional drug notes. The plants were seized and tests later confirmed that the plants tested positive for marijuana and weighed 1,091.09 grams. On March 26, 2013, the state charged appellant with one count of felony possession of a controlled substance in the fifth degree.

Appellant moved to suppress the seized evidence on the grounds that the police officer entered his place of business without a search warrant or exigent circumstances justifying entry. The state argued that the police officer's initial entry into appellant's business was proper because there were exigent circumstances and the landlord had the authority to consent to the search. Surprisingly, the state did not raise a private-action argument in its written memorandum and did not elicit testimony to support that argument during the suppression hearing.

The district court denied the motion to suppress, determining that the entry did not constitute a Fourth Amendment search because the police officer was acting to prevent an emergency situation and a warrant was not required. The district court also determined that if the Fourth Amendment applied, the "totality" of the exigent circumstances justified a warrantless entry. Following its decision, the district court conducted a stipulated facts trial. Appellant was found guilty of the charged offense and received a stay of imposition under Minn. Stat. § 609.135 (2012). This appeal followed.

**D E C I S I O N**

Appellant challenges the district court's denial of his motion to suppress evidence obtained as a result of the search of his business. When reviewing a pretrial order on a motion to suppress, we review the district court's factual findings for clear error and the legal determinations de novo. *State v. Milton*, 821 N.W.2d 789, 798 (Minn. 2012).

**I.**

The state argues for the first time on appeal that the police officer's warrantless entry into appellant's business was lawful because it was "instigated by and done for the

4

benefit of private parties." *See State v. Buswell*, 460 N.W.2d 614, 617-18 (Minn. 1990) (concluding that a private search, even if unreasonable, does not compel suppression of evidence "because there is no constitutional violation"). The state did not present this argument to the district court. Appellant asserts that the state waived the private-action argument by failing to raise it in district court. We agree.

Generally, issues not raised below will not be considered on appeal. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). But we may address issues raised for the first time on appeal when the "interests of justice require their consideration and doing so would not work an unfair surprise on a party." *State v. Henderson*, 706 N.W.2d 758, 759 (Minn. 2005) (citing Minn. R. Crim. P. 28.02, subd. 11).

In *State v. Grunig*, the Minnesota Supreme Court considered whether the state waived the issues of actual or apparent authority to consent to a warrantless search where it did not argue these issues to the district court and the issues were raised for the first time on appeal. 660 N.W.2d 134, 135 (Minn. 2003). We held that the state waived these arguments. *Id.* But our supreme court reversed and remanded, concluding that:

> A respondent can raise alternative arguments on appeal in defense of the underlying decision when there are sufficient facts in the record for the appellate court to consider the alternative theories, there is legal support for the arguments, and the alternative grounds would not expand the relief previously granted.

*Id.* at 137.

The present case is readily distinguishable from *Grunig*. In that case, the state built a factual record with respect to the issue of apparent authority at the suppression

5

hearing and elicited testimony from the fact witnesses bearing directly on that issue. *Id.* By contrast, in this case the state failed to develop a factual record supporting its private-action argument. *See Garza v. State*, 632 N.W.2d 633, 637 (Minn. 2001) (concluding that "[b]ecause the state failed to take advantage of its opportunity to build a factual record with respect to [a newly raised issue], we do not believe that resolution of the issue is necessary to the interests of justice").

Moreover, applying the exception to the waiver-rule would "work an unfair surprise" on appellant, who was not given notice of the issue or an opportunity to present evidence. *State v. Sorenson*, 441 N.W.2d 455, 457 (Minn. 1989) (recognizing appellate court's discretion to consider new issues "when the interests of justice require their consideration and addressing them would not work an unfair surprise on a party"). Because we conclude that appellant was not given an opportunity to present evidence on the private-action argument at the suppression hearing and there is not a sufficient factual record for this court to meaningfully address the state's newly raised private-action argument, we deem it waived.

## II.

We next address whether the police officer's entry into appellant's business constituted a search. *State v. Davis*, 732 N.W.2d 173, 176 (Minn. 2007). The Fourth Amendment to the United States Constitution and article 1 of the Minnesota Constitution protect an individual from "unreasonable searches and seizures" by the government. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. A "search" occurs "upon an official's

6

invasion of a person's reasonable expectation of privacy." *State v. Johnson*, 831 N.W.2d 917, 922 (Minn. App. 2013), *review denied* (Minn. Sept. 17, 2013).

The Fourth Amendment generally requires a warrant before the government may search the home or business of a private individual. *State v. Richards*, 552 N.W.2d 197, 203 (Minn. 1996). Business premises are accorded the same constitutional protections as residential properties. *Id.* A search conducted without a warrant is presumptively unreasonable and, if no exception applies, the fruits of the search must be suppressed. *State v. Hummel*, 483 N.W.2d 68, 72 (Minn. 1992).

The district court determined that the police officer entered the premises "for the safety of the employees," and that "this type of entry was standard under similar circumstances to prevent an emergency situation." Both the police officer and the CenterPoint technician testified at the suppression hearing that it was a common practice for the company to secure a police escort when entering a property to ensure the employee's safety.

Based on this testimony, the district court concluded the "the initial entry was not a search for purposes of the Fourth Amendment when the police entered the property." The district court relied on *State v. Wybierala*, 305 Minn. 455, 460, 235 N.W.2d 197, 200 (1975), to support its determination that constitutional protections against unreasonable searches "do not apply to reasonable rules and regulations adopted in the exercise of police power for the protection of the public health, morals, and welfare."

*Wybierala* is distinguishable. In that case, the supreme court determined that the police did not infringe upon a pawnbroker's Fourth Amendment rights by examining

7

goods at the pawnshop during the store's business hours, consistent with a legislative provision relating to secondhand dealers. *Id.* at 459-60, 235 N.W.2d at 199-200. While the state in *Wybierala* relied upon a legislative provision explicitly governing secondhand stores, the state in this case has not identified which "reasonable rules and regulations" they were acting under when they entered appellant's place of business. The district court acknowledged that "there is no specific rule or regulation" covering this situation. Therefore, we conclude that the police officer's warrantless entry into appellant's place of business constituted a search under the Fourth Amendment.

**III.**

Having determined that the officer's entry into the business was a search triggering constitutional protection, we next examine whether the district court correctly found that exceptions to the warrant requirement apply. Minnesota recognizes several established exceptions, including exigent circumstances and emergency aid. *Richards*, 552 N.W.2d at 203; *Hummel*, 483 N.W.2d at 72; *State v. Lemieux*, 726 N.W.2d 783, 787-88 (Minn. 2007). The state bears the burden of establishing that an exception to the warrant requirement exists. *State v. Johnson*, 689 N.W.2d 247, 251 (Minn. App. 2004), *review denied* (Minn. Jan. 20, 2005).

**A.**

The state argues, and the district court agreed, that the officer's entry was justified under the emergency-aid exception, which permits a police officer to conduct a warrantless entry "to render emergency assistance to an injured occupant or to protect an

8

occupant from imminent injury." *Lemieux*, 726 N.W.2d at 787-88. Minnesota utilizes a three-prong test to determine whether the emergency-aid exception applies:

> (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.
> (2) The search must not be primarily motivated by intent to arrest and seize evidence.
> (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

*Id.* at 788.

In analyzing the emergency-aid exception, this court applies an objective standard to determine the reasonableness of the officer's belief that an emergency exists. *State v. Othoudt*, 482 N.W.2d 218, 223 (Minn. 1992). To determine whether an officer's actions meet this standard, the court asks "whether with the facts available to the officer at the moment of the seizure or search, would a person of reasonable caution believe that the action taken was appropriate." *Id.*

The district court found that the police officer believed that it was necessary to enter the building "because without the pilot lighting, there would be no heat, and also the hazard of a potential explosion." Appellant argues that the record does not support the district court's findings, and we agree. The technician testified that he was not concerned about an explosion. Instead, the technician was concerned that the pipes could freeze. The technician and the locksmith were at the building for approximately two hours before the police officer arrived, waiting to gain access to appellant's business. The defense also elicited testimony that the police officer did not call for other

9

emergency personnel, such as the fire department or medical assistance, to respond to the gas leak, suggesting that it was not an emergency situation.

The factual record does not support a conclusion that there was an "immediate need for [an officer's] assistance for the protection of life or property" and we determine that the emergency-aid exception does not apply. *Lemieux*, 726 N.W.2d at 788; *see State v. Fitzgerald*, 562 N.W.2d 288, 288 (Minn. 1997) (determining exception did not apply when police had vague understanding that potential victim "may need help").

**B.**

Appellant also challenges the district court's application of the exigent-circumstances exception. Two fact patterns give rise to the exigent circumstances exception: "(1) a situation in which a single matter, such as a fleeing felon or danger to persons or evidence, is highly compelling; and (2) 'a totality of the circumstances' situation." *Hummel*, 483 N.W.2d at 72 (quoting *State v. Gray*, 456 N.W.2d 251, 256 (Minn. 1990), *cert. denied*, 498 U.S. 1030 (1991)). The district court concluded that "there is no single compelling factor to justify the warrantless entry," and then considered whether the exception applied under the totality of the circumstances.

In weighing the "totality of the circumstances," Minnesota courts generally apply the factors set forth in *Dorman v. United States*, 435 F.2d 385, 392-93 (D.C. Cir. 1970). *Hummel*, 483 N.W.2d at 72-73. These factors are:

> (a) whether a grave or violent offense is involved; (b) whether the suspect is reasonably believed to be armed; (c) whether there is strong probable cause connecting the suspect to the offense; (d) whether police have strong reason to believe the suspect is on the premises; (e) whether it is likely the suspect

will escape if not swiftly apprehended; and (f) whether peaceable entry was made.

*Id.*

Not all of the *Dorman* factors must be satisfied in order for the exception to apply. *Id*. at 73. These factors are "not exhaustive," and courts may consider "unfolding developments" that occur as the situation changes. *Gray*, 456 N.W.2d at 256-57.

The district court determined that the *Dorman* factors "are not directly applicable because no offense was committed and no suspect existed before the warrantless entry." We agree with appellant that the totality of the circumstances do not support the application of the exigency exception. There is no evidence in the record that a "grave or violent offense" occurred, that appellant was connected with an offense, that he was armed, or that he was on the premises. The district court erred by determining that a warrantless entry was justified under the exigency exception based upon the totality of the circumstances.

**Reversed.**